SCHMULBACH v. CALDWELL et al.

(Circuit Court of Appeals, Fourth Circuit. March 2, 1912.)

No. 1,032.

1. COURTS (§ 489*)—JURISDICTION OF FEDERAL COURTS—SUIT TO ENFORCE MECHANIC'S LIEN.

A federal court of equity has jurisdiction of a suit to enforce a mechanic's lien given by a state statute where there is the requisite diversity of citizenship and amount involved, although the statute may designate a particular state court in which such suits shall be brought.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1324–1330, 1333–1341, 1372–1374; Dec. Dig. § 489.*

Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

2. COURTS (§ 342*)—SUIT TO FORECLOSE IN FEDERAL COURT—FORM OF SUIT.

Where a federal court has jurisdiction of a suit to enforce a mechanic's lien because of diverse citizenship and the amount involved, the form of the suit, whether in equity or at law, is determined by the rules governing its own jurisdiction and procedure, and not by the state statute creating the lien.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 912, 913; Dec. Dig. § 342.*]

3. PLEADING (§ 406*)—OBJECTION THAT SUIT WAS PREMATURELY BROUGHT—WAIVER BY FAILURE TO DEMUR.

In a suit to foreclose a mechanic's lien, where the contract is made a part of the bill, and shows that by its terms the contract price was not due when the suit was brought, the objection should be taken by de-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

murrer. and is waived by an answer to the merits which also sets up a counterclaim on which an affirmative judgment is demanded.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1355–1359, 1361–1365, 1367–1374, 1386; Dec. Dig. § 406.*]

**4. CONTRACTS (§§ 284, 232*)—BUILDING CONTRACTS—SUBSTANTIAL PERFORMANCE—WAIVER OF STRICT PERFORMANCE.**

Under a building contract providing that no alterations from the specifications should be made except on written order of the architects or owner, and, when so made, the value of the work added or omitted should be computed by the architects, and, if either party dissented, determined by arbitration where the contract was not strictly observed by either party, some alterations being ordered in writing and others orally, and it did not appear while the work was in progress that there was any difference between them as to the value of extra work, the owner who has taken possession of and used the building cannot defeat a suit for such extra work on technical grounds because written orders therefor were not always given nor because there was no previous arbitration.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1292–1302, 1308–1310, 1312–1316, 1326–1338, 1340–1342, 1344–1346, 1350, 1351; Dec Dig. §§ 284, 232.*]

**5. CONTRACTS (§ 300*)—BUILDING CONTRACTS—DELAY IN COMPLETION OF WORK —LIQUIDATED DAMAGES.**

A provision of a building contract requiring the contractor to pay a stated sum per day as liquidated damages for delay beyond a given date in completing the work is valid, and the courts will not refuse to enforce it because a part of the delay was caused by the owner or other contractors for which he is responsible, where either by competent and satisfactory evidence or by a contractual standard fixed by the parties themselves the delay can be apportioned between them with reasonable certainty.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1372–1381; Dec. Dig. § 300.*]

**6. CONTRACTS (§ 348*)—BUILDING CONTRACTS—DELAY IN COMPLETION OF WORK —PROVISION FOR LIQUIDATED DAMAGES.**

A provision in a contract for a building that the contractor should pay $50 per day as liquidated damages for each day the completion of the building was delayed beyond a specific date, but that he should "have credit for such days as the architects and owner shall certify at the time, as days when the weather forbids work, and credit for each and every day he is delayed by the owner or other contractors employed by the owner," makes the contractor liable prima facie for each day the work was delayed, and he has the burden of proving the days for which he is entitled to credit by certificates from the architects or otherwise.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1095, 1754–1759, 1762–1780; Dec. Dig. § 348.*]

**7. MECHANICS' LIENS (§ 157*)—RIGHT TO LIEN—FILING OF EXCESSIVE CLAIM.**

The statutory right to a mechanic's lien cannot be denied because the claimant filed an excessive claim.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 268–274; Dec. Dig. § 157.*]

Appeal from the Circuit Court of the United States for the Northern District of West Virginia, at Wheeling.

Suit in equity by George W. Caldwell and Lester Drake, partners as Caldwell & Drake, against Henry Schmulbach. Decree for complainants, and defendant appeals. Modified.

See, also, 175 Fed. 429.

*For other cases see same topic & § NUMBER in Dec. & Am Digs. 1907 to date, & Rep'r Indexes

J. W. Ritz and Nelson C. Hubbard (S. M. Noyes, Alfred Caldwell, and Hubbard & Hubbard, on the briefs), for appellant.

John A. Howard and John J. Coniff (James W. Ewing, on the brief), for appellees.

Before GOFF and PRITCHARD, Circuit Judges, and CONNOR, District Judge.

CONNOR, District Judge. Plaintiffs, appellees, citizens and residents of the state of Indiana, on the 9th day of February, 1905, entered into a contract with defendant, appellant, a citizen and resident of the state of West Virginia, whereby they contracted to furnish certain material and do certain work in the construction of a 12-story office building, in the city of Wheeling, W. Va., on the land described in the record, of which defendant was the sole owner. Among the provisions material to a determination of the questions presented upon the record are the following: The price to be paid to plaintiffs for the material furnished and work done, contemplated by the contract, was $231,698—

"payments to be made every thirty days on estimates of architects, providing, however, that the work is satisfactory, ten per cent. (10%) of each estimate to be reserved until completion of the contract. The final payment to be made twenty (20) days after the contract is completed and satisfactory to the architects and the owner."

M. F. Giesey and F. F. Faris were named as the supervising architects "acting as the agents of the owner." The contractors agreed and bound themselves to have all of the work contemplated by the contract finished and ready to turn over to the owner by December 31, 1905—

"and, in case of a failure, in this particular agreed to pay the owner the sum of fifty dollars ($50) per day, as measured damages for each and every day beyond the 31st day of December, 1905, that the said failure exists, provided, however, that said contractors shall have credit for such days as the architect and owner shall certify at the time, as days when the weather forbids work, and credit for each and every day he is delayed by the owner, if such delay is also certified to by the architects and owner at the time it occurs."

It is further provided:

"No alterations shall be made in the work shown or described by the drawings or specifications except upon a written order of the architects or owner, and when so made, the value of the work added or omitted shall be computed by the architects, and the amount so ascertained shall be added to or deducted from the contract price. In case of dissent from such award by either party hereto, the valuation of the work added or omitted shall be referred to three (3) disinterested parties, one to be appointed by each of the parties to this contract and the third by the two thus chosen; the decision of any two of whom shall be final and binding, and each of the parties hereto shall pay one-half the expense of such reference."

A large number of alterations were made during the construction of the building. Some of the material and work, called for by the contract, was omitted. For various reasons, not necessary to specify at this time, plaintiffs were delayed in commencing the construction of the building.

Plaintiffs allege that:

"On the 6th day of August, 1907, they ceased to labor on, or furnish material for the said building, having then fully completed the construction of said building in accordance with the said contract."

On the 17th day of August, 1907, they filed with the clerk of the county court of Ohio county an account of the amount due them and a description of the real estate upon which said building was constructed, as prescribed by the statute, etc. On the 21st day of August, 1907, plaintiffs filed their bill in equity in the Circuit Court of the United States for the Northern District of West Virginia, alleging that there was a balance due them on said building and for extras of $49,725.75. The purpose of the suit is to enforce the lien on said building and lot given by the statute of West Virginia. Attached to the bill is a copy of the contract and exhibits containing an itemized statement of plaintiffs' claim. Defendant, in due course, filed his answer, in which he admits that plaintiffs on August 6, 1907, ceased to labor or furnish material on said building, but denies that they had then fully completed the construction thereof in accordance with the contract. He denies that the amount claimed for extras is correct, alleges that he is entitled to a credit of $6,329.06 for work omitted, also that he has paid on account of the original contract $2,700 more than he is credited with. He alleges that by reason of delay on the part of plaintiffs from December 31, 1905, to August 6, 1907, to complete the building—being 583 days—he is entitled to recover, as measured damages, $50 per day, making $29,150. Exhibits, specifications, etc., are attached to the answer. The pleadings disclosed a controversy in respect to: (1) The amount due plaintiffs on original contract. (2) The amount due for extras. (3) The amount due defendant for omitted work. (4) The amount due defendant on account of delay.

After taking testimony, the judge proceeded to consider "the matters of principal dispute, involving legal propositions," and thereupon referred the cause to the master with specific directions in respect to the manner in which, and the principles upon which, the account should be stated. In the opinion of the judge defendant was not entitled to recover any amount for delay. To this ruling defendant excepted. The master filed his report showing the amount due plaintiffs on the original contract and for extras, and amount due defendant for work omitted. The report discloses a most careful and intelligent consideration of the questions referred to the master. Each item of extra and omitted work and material is considered separately, following strictly the direction of the court. The amount found to be due on the original contract was $21,309.50, for extra work $11,520.89. This amount is found to be subject to a credit, for omitted work, of $3,281.37. A number of exceptions were filed by defendant. They were considered by the court, and a decree made declaring a balance due plaintiffs of $35,739.49. From this decree defendant prosecutes this appeal based upon 39 assignments of error. The cause was submitted in this court upon briefs and oral argument upon

certain propositions of law. It is first insisted that the Circuit Court did not have jurisdiction of the suit.

[1] This contention is based upon the language of the West Virginia statute respecting the enforcement of mechanics' liens. Section 10, c. 75, Code of West Virginia, provides that:

"Any person having a lien, under or by virtue of this chapter, may enforce the same by filing a bill in chancery in the circuit court of the county in which his account is filed as aforesaid, etc."

It is earnestly insisted that, because the mechanic's lien is the creature of the state statute, it can be enforced only in the court prescribed by the statute. It is unquestionably true that, when the Legislature of a state creates a right, it may prescribe in which of its courts the right may be enforced, and may make, within the limitation of its own Constitution, such jurisdiction either exclusive or concurrent. Usually mechanics' liens are enforced in those courts having jurisdiction of the causa litis, the enforcement of the contract; the lien being regarded as ancillary to the principal remedy. This generally carries actions for the recovery of money claimed to be due on contracts for material furnished or work and labor performed into the courts of law, where the claimant has an adequate remedy for the establishment of his debt. It frequently occurs, however, that questions of priority or conflicting liens are presented in which cases the law court has not the machinery for bringing into the record all interested in the proceeds of sale of the property and so moulding its decrees that the rights of all persons in interest may be protected, their liens transferred to the proceeds of the property, thus enabling the court to bring it to sale under such conditions that the purchaser will acquire a perfect title and the owners and lienors receive its full value. That the Legislature of West Virginia had this purpose in view is indicated by the provision in the section of the statute which requires the plaintiff to make all other persons having liens parties and permitting any other person acquiring a lien before a decree shall be passed to make himself a party. The statute further provides that, if the original plaintiff fails to establish his claim, the suit shall not be dismissed, but may be prosecuted by any other party, etc. Whether it was the purpose of the Legislature to confer exclusive jurisdiction upon the court of chancery or only to permit the claimant to file his bill in chancery, thereby giving that court concurrent jurisdiction with the law court, it is not necessary for us to inquire. It is significant that the terms used in conferring the right is permissive, and not mandatory. In neither view can we suppose that it was the purpose of the Legislature to divest the jurisdiction of the federal court when the elements of diverse citizenship and the amount prescribed by the statute existed. This jurisdiction is of constitutional origin, and cannot be divested by state legislation. It is elementary learning that in cases such as this the jurisdiction is based not upon the character of the right to be enforced, but the diverse citizenship of the parties. The federal court, in such cases, administers the state law, as found in the state statutes and construed by the state court. The contention of the learned counsel that, because the state statute confers jurisdiction upon the chancery

court of the county in which the notice of lien is filed, therefore the jurisdiction of the federal court is excluded, would carry us to a conclusion which would oust the jurisdiction of the federal court in almost, if not every, statutory right or cause of action, because in every case the special statute or the Code of Procedure of each state prescribes the state court in which suits shall or may be brought for their enforcement.

[2] Assuming that the Circuit Court had jurisdiction, because of diverse citizenship of the parties, it is settled that whether the suit is to be at law or in equity is dependent upon familiar principles of federal jurisdiction and procedure. In Clark v. Smith, 13 Pet. 195, 10 L. Ed. 123, it is said:

"The state Legislatures certainly have no authority to prescribe the forms and modes of proceeding in the courts of the United States; but, having created a right and, at the same time, prescribed a remedy to enforce it, if the remedy prescribed is substantially consistent with the ordinary modes of proceeding on the chancery side of the federal courts, no reason exists why it should not be pursued in the same form as it is in the state courts. On the contrary, propriety and convenience suggest that the practice should not materially differ when titles to land are the subjects of investigation."

This rule has been uniformly followed in the federal courts, and has been specifically applied to suits to enforce mechanics' liens. In Davis v. Alvord, 94 U. S. 545, 24 L. Ed. 283, Mr. Justice Davis says:

"It is a suit in equity requiring specific directions for the sale of property, such as are usually given upon the foreclosure of mortgages and sale of mortgaged premises."

And Mr. Justice Field in Sheffield Furnace Co. v. Witherow, 149 U. S. 574, 13 Sup. Ct. 936, 37 L. Ed. 853 says:

"The foreclosure of a mechanic's lien is essentially an equitable proceeding."

Jefferson Hotel Co. v. Brumbaugh, 168 Fed. 867, 94 C. C. A. 279, was a suit in equity to enforce a mechanic's lien. In Healey Ice Mach. Co. v. Green (C. C.) 181 Fed. 890, notwithstanding the state statutes creating the lien gave a right of action at law for its enforcement, jurisdiction in equity in the federal courts was maintained. 191 Fed. 1004. We are of the opinion that the Circuit Court had jurisdiction of the suit. The distinction between this case and the ruling of Judge Keller in Hirsch v. Independent Steel Co., 196 Fed. 104, cited by counsel, is clear.

[3] Appellant next insists that, by the terms of the contract, the final balance is not due until 20 days after the building is completed satisfactory to architects and owner. It is alleged that the building was completed on August 6, 1907, and the suit brought August 21, 1907. There is no allegation of a demand on the architect and owner, or either of them, for a certificate of satisfaction. If this question had been raised by demurrer, which may have been done, as a copy of the contract was attached to and made a part of the bill, it would probably have been sustained, and plaintiffs compelled either to amend or submit to a dismissal of their bill. Counsel for appellee meet this contention by saying that defendant has estopped himself from relying upon this defense by taking possession of the building, and also

by relying on the doctrine of substantial compliance or performance. The answer to both these positions is found in the failure to set them up in the bill, which simply alleges completion of the building "in accordance with the said contract." It is well settled that parties may, by contract, make completion of a building to the satisfaction of the owner and his architect a condition precedent to the right to demand the contract price. Defendant did not demur to the bill because, upon its face, it appeared that the suit was prematurely brought, or that the condition precedent had not been complied with, but filed an answer denying the allegation of completion, and set up a counterclaim upon which he demanded an affirmative judgment for a large amount. When the defendant, "instead of objecting that the action is brought prematurely, presents issues upon the merits of the case, and includes, with his denial, a counterclaim for damages and also claims set-off and asks for a judgment and proceeds to the trial of the case upon the merits," he waives the defense that the action is prematurely brought. 20 Am. & Eng. Enc. 520. It is true that, reading the contract as a part of the bill, it appears that the balance due on the building was not payable until "twenty days after the contract is completed and satisfactory to owner and architects," and that the suit was brought before the expiration of the 20 days after completion, and without alleging that it was satisfactory to the owner and architects or any fact relieving plaintiffs from showing such satisfaction. These vices in the bill were apparent upon its face and subjected it to demurrer. We are of the opinion that they were waived by the answer. Following the filing of the answer an immense mass of testimony was taken, comprising more than 1,750 pages of the printed record and consuming two years' time. During this time no question was presented, or motion made, to dismiss the bill for that it was prematurely brought. At the hearing before Judge Dayton, December 23, 1909, it appears that the question was raised. The learned judge discusses it in the light of the testimony and authorities. It is sufficient for us to say that we concur in the conclusion reached by him for the reasons clearly set forth in his opinion. "The mere statement of the proposition that the owner, under such a contract, for mere trifling defaults, or, at his own will, may declare himself dissatisfied, and thereby be permitted to retain, as in this case, over $20,000 of the contract price for all time, and at the same time, take possession of and receive the use and benefit of the work done, refutes its soundness in morals and good conscience. It has therefore long since been held that substantial compliance with the terms of the contract is all that can be required. This is the holding of the Supreme Court of Appeals in this state in West Building Company v. Saucer, 45 W. Va. 483 [31 S. E. 965, 72 Am. St. Rep. 822]." Defendant in his answer admits that there is due on the contract $21,309.58; the only difference between him and plaintiffs being the payment of $2,700, promptly conceded by plaintiffs. Defendant took possession of the building, installed tenants, and has been receiving the rents since plaintiffs ceased to work thereupon. We are of the opinion that the court below correctly refused to dismiss the bill.

[4] We are thus brought to a consideration of the claim for extra work and material. Defendant contended in the court below, and strongly insists here, that plaintiffs are not entitled to any compensation for extra work and materials unless it is shown that the provisions of the contract in that respect are met and complied with. As pointed out by Judge Dayton, the contract provides that payment for extra work shall not be allowed "except upon a written order of the architects or owner," whereas the specifications provide that changes must be authorized "by the architects and owner." The terms of the contract control—it is there that the negotiation is completed—and the minds of the parties met. It is also provided that, in case of dissent of either party from the values allowed for extras, the matter shall be submitted to arbitration, etc. The finding of the master, based upon abundant evidence, shows that a very large portion of the extras were made upon the written order of the architects. Only $1,-532.17, for which no written orders were given, was allowed. While it is true that no arbitration was had in respect to differences of amount allowed for work done upon written orders, it is apparent that at no time during the performance of the work did either party have any notice of a difference in respect to the value thereof; therefore no occasion arose for invoking an arbitration. We do not think the agreement to submit differences to arbitration precludes the party doing the work to sue for compensation. It is not a condition precedent to his right of action. The master has carefully examined the testimony in regard to each item of extras. He has, as directed by the order of reference, carefully scrutinized the charges. In regard to the other charges he has found that each alteration was necessary— in many of them it would have been impracticable for the architects to have given a written order. It is evident that neither of the parties were adhering strictly to all of the terms of the contract in respect to these items of extra work. There is ample ground upon which to base the conclusion that in regard to them there was, by course of conduct, a waiver of the terms of the contract. They enter into the building, enhance its value, and defendant is in the enjoyment of them. As said by Mr. Justice Holmes in Bartlett v. Stanchfield, 148 Mass. 394, 19 N. E. 549, 2 L. R. A. 625, cited in the opinion of Judge Dayton, dealing with a charge for extras in a suit upon a building contract very similar to this:

"Attempts of parties to tie up by contract their freedom of dealing with each other are futile. The contract is a fact to be taken into account in interpreting the subsequent conduct of plaintiff and defendant, no doubt."

While courts will enforce contracts, as made by the parties, they will require that both parties shall "live up" to them. One may not by a course of conduct induce another to act upon the understanding that there is a waiver of strict performance, thereby obtain an advantage or benefit and repudiate liability for fair compensation by invoking the terms of the contract. To do so is inequitable. Whatever difficulties a court of law may find in dealing with such cases by reason of technical rules of pleading disappear in a court of equity where

it is apparent that one party has acquired a benefit from the work done and material furnished by the other, under such circumstances as to make it inequitable to withhold compensation. It is manifest that the extras for which no written order was given come within this principle. The master has properly held the plaintiffs to strict proof in respect both to the necessity for the work and its value. He has rejected every doubtful claim. These findings have been approved by a learned and careful judge. The course pursued in the construction of the building in this respect is much like, and we think comes clearly within, the well-reasoned and sustained opinion of this court in Jefferson Hotel Co. v. Brumbaugh, supra. The exceptions, in respect to the extras, cannot be sustained. There is no exception to the findings in regard to the claim by defendant for omitted work.

[5] We are thus brought to the consideration of the claim of defendant for "measured damages" for delay. The terms of the contract are clear and free from difficulty. For each day of delay, in completing the building after December 31, 1905, plaintiffs agree to pay to defendant $50 "as measured damages." It is further provided that plaintiffs are entitled to a credit "for such days as the architect and owner shall certify, at the time, as days when the 'weather forbids work; and credit for each and every day they are delayed by the owner, or other contractor employed by the owner, if such delay is also certified by the architects and owner at the time." The learned judge below was of the opinion that the evidence brought .this case within the principle announced in the Jefferson Hotel Co. Case, supra, and excluded all claim for measured or liquidated damages. It therefore becomes necessary to ascertain the facts in that case, and see just what this court there decided. It appears from a careful examination of the opinion that Brumbaugh entered into a contract with the Jefferson Hotel Company to rebuild, for a stipulated sum, a part of the hotel which had been destroyed by fire. The work to be done was specified, provision made for supervising architects, etc. The Hotel Company awarded a number of other independent contracts for different departments of the work and furnishings. The contract with Brumbaugh contained a clause whereby he agreed to pay to the company as liquidated damages $150 a day for delay in completing the work after October 1, 1901, "excepting delays caused by the party of the second part." The opinion does not disclose the causes of the delay. The Hotel Company, as does the defendant here, set up a claim for liquidated damages for delay. Judge Dayton, writing for the unanimous court, says:

"We deem it sufficient to say that it must be conceded that, in the rebuilding of this hotel, a number of contracts, independent of the plaintiffs, were let whereby a large amount of work was to be done and material furnished by the company by and through independent contractors. It must be conceded, also, that the entire completion by plaintiff of his contract work was dependent upon these other contracts, or some of them being completed first. For these conditions, the Hotel Company must be held responsible."

The opinion proceeds to point out the various causes which, in the course of the construction of a building on which a number of inde-

pendent contractors were engaged, would cause delays in the work upon which the principal contractor was engaged. It is further said:

"Courts cannot know of these conditions as they actually existed at the time, and the evidence would be very unsatisfactory taken months after that would attempt to set forth all such conditions. Therefore the courts have laid down a very salutary rule to the effect that they will not attempt to apportion such delays when the causes thereof have been mutual, but will refuse under such circumstances to enforce the penalty."

An examination of the cases cited in the opinion (Stewart v. Ketelas, 36 N. Y. 388; Heckman v. Pinkney, 81 N. Y. 211; Weeks v. Little, 89 N. Y. 566) disclose that no question in regard to enforcing a contract for liquidated damages is presented. It is because of the difficulty referred to that parties frequently, and especially in building contracts, insert a clause providing for a stipulated sum as measured or liquidated damages. The courts effectuate the intention of the parties as expressed in their contracts, and, subject to certain limitations, hold that amounts so agreed upon are liquidated damages, and not penalties. The principle is discussed and the authorities cited in Charleston Lumber Co. v. Friedman, 64 W. Va. 151, 61 S. E. 815. Mr. Justice Brannon quotes, with approval, the language of the New Jersey court in Monmouth Park v. Willis Iron Works, 55 N. J. Law, 132, 26 Atl. 140, 19 L. R. A. 456, 39 Am. St. Rep. 626:

"Where damages for breach of contract are uncertain in amount and not readily susceptible of proof, then, if the parties have expressly agreed upon a sum as the measure of compensation for the breach and that sum is not disproportionate to the presumable loss, it may be recovered as liquidated damages. Stipulations for specific or liquidated damages, on breach of a contract to build within a limited time, are enforceable."

Again it is said:

"Because of the difficulty of ascertaining with certainty the damages arising from failure to complete working contracts within the stipulated time, the parties to such contracts frequently provide for the payment of a specified amount as liquidated damages for failure to perform the contract in time and the courts have unhesitatingly upheld and enforced such provisions." 30 Am. & Eng. Enc. 1263.

In Friedman's Case the court sustained and enforced a contract for the payment of $10 a day for failing to complete a contract by a stipulated date. There is nothing in the circumstances attending this contract, the character of the work, the size and cost of the building, or other facts to take it out of the principle announced in these cases. The defendant is entitled to enforce the contract in this respect and recover the amount fixed as measured damages, unless for some valid legal reason, arising upon the evidence, he is prevented from doing so. The contract in the Jefferson Hotel Case provided that for each day's delay the contractor was to pay $150, "excepting delays caused by the party of the second part." It is said in that case:

"The enforcement of penalties is not favored in equity, and they are so enforced only after the demandant therefor has shown that he himself has strictly complied on his part with all the contract requirements prerequisite to such enforcement."

This is unquestionably true where the claim made by the defendant is for a penalty. If, however, as in this case, the claim is for meas-

ured or liquidated damages the amount whereof is expressly agreed upon by the parties, the principle there involved does not apply. On the contrary, it is held by the court of West Virginia that:

"In the absence of actual fraud or mistake, a court of equity will not interfere with a contract made between parties competent to contract" (Bank v. Benington Coal & Coke Co., 51 W. Va. 60, 41 S. E. 390); and "it is the duty of the court to construe contracts as they are made by the parties thereto, and to give full force and effect to the language used when it is clear, plain, simple and unambiguous" (Griffin v. Coal Co., 59 W. Va. 480, 53 S. E. 24, 2 L. R. A. [N. S.] 1115).

The question is discussed by the present Chief Justice in Sun Printing & Pub. Ass'n v. Moore, 183 U. S. 642, 22 Sup. Ct. 240, 46 L. Ed. 366, with a wealth of learning, upon both American and English authorities, reaching the conclusion that:

"The naming a stipulated sum to be paid for the nonperformance of a covenant is conclusive upon the parties in the absence of fraud or mutual mistake. Parties may, in a case where the damages are of an uncertain nature, estimate and agree upon the measure of damages which may be sustained from the breach of an agreement."

The learned judge below cited this, and other cases, but was of the opinion that the principle announced in them did not apply because it appeared that the delay had arisen by the joint and mutual fault of the owner or his independent contractors. It seems that in the Jefferson Hotel Case the court found it impossible to separate such delays as were caused by plaintiffs from those caused by defendant and its independent contractors; hence refused to allow defendant to recover for any delays. The judge below in this case says:

"But it is insisted that the contract itself here provides, in express terms, for such apportionment of delay, and in this particular differs from the terms of the one in the Jefferson Hotel Case. It seems to me that this cannot change the situation. The law is that courts by reason of the very uncertainty, the impossibility to fairly and justly determine the causes of such mutual delays and their effects, will not attempt to apportion. This being true, no private contract, by its terms, can change the law or compel them to do so."

Two questions are thus presented: Have the parties in this case provided for such apportionment? That is, agreed upon a rule for the guidance of the court? The amount is agreed upon "as measured damages" for each day's delay after December 31, 1905. If the contract contained no other provision, no duty would be imposed, or power conferred, upon the court, in the absence of evidence of a waiver, to apportion the delays or inquire into their cause. The number of days during which the delay continued, after the period fixed for completion, multiplied by the amount to be paid per day, would fix the amount for which the contractors are liable. Recognizing that there would be days of delay for which the contractors should not be liable, the parties provide that, from the whole number of days of delay, the contractors are entitled to a credit for "the days when the weather forbids work * * * for each and every day they are delayed by the owner, or other contractor employed by the owner." Thus three classes of delays, for which the contractors are to be credited, are expressly provided. Recognizing, further, that controversies

would arise by reason of the conditions enumerated in the opinion in the Hotel Case, the parties make specific provision for ascertaining, at the time of delays, whether they fall within the classes for which credit is to be allowed.   It is provided that credit shall be allowed for "such days as the architect and the owner shall certify, at the time, as days," etc.   Thus the parties have relieved the court of the very difficulty experienced in apportioning the delays, which constitute the reason assigned by it for refusing to do so.   If the parties in this case have complied with the terms of their contract, a simple problem is presented to the court—easy of solution.   But it is said, because the courts refuse to apportion delays, no private contract can change the law.   The answer is twofold—there is no decision of controlling authority upon this court, and we are not aware of any principle of law, which prevents or relieves the court from apportioning the delays when, either by competent and satisfactory evidence, or by a contractual standard fixed by the parties, they can do so with reasonable certainty.   It is only in those cases where neither of these elements are found that the court refuses to apportion the delays or assess the damages.   The genesis of the principle is found in the familiar rule that the party who seeks to recover damages for breach of contract carries, throughout the trial, the burden of proving the breach and showing either the damage which he has sustained or such evidence as will enable a jury, under the instruction of the court, to assess the amount of damages to which he is entitled.   Of course, if he fails in the first he recovers nothing, if in the second, he recovers but nominal damage; in other words, he must show to the court that there has been a breach of the contract and what damages, within the contemplation of the parties, have proximately flowed therefrom.   If, as in the Hotel Case, he shows a breach of contract and the amount of liquidated damages agreed upon, but leaves the question as to the number of days for which he is entitled to recover in such uncertainty that it is impossible to fix them, he will fail to recover any amount.   This principle, however, has no application when the claimant shows the number of days for which he is entitled to recover the sum stipulated as liquidated damages, and also shows a contract placing upon the defaulting party the duty of showing the number of days with which he is entitled to be credited.   This case is further removed from the principle applied in the Hotel Company Case because the parties have, by their contract, prescribed the rule or manner of showing the number of days for which the party in default is entitled to credit.   It is entirely competent and essential to the freedom of contract for parties to make provision against difficulties pointed out by the courts in decided cases.   If this were not so, the business and industrial life of the people would be unduly restricted in its growth and adaptation to the necessities and demands of a progressive civilization.   It is one, and not the least, of the advantages of our judicial system that business and social life conforms itself to the law as declared by the courts, and so adjusts its growth to legal principles.   The courts say to the litigants in one case: "Your contract is too indefinite in its provisions to enable us to enforce it.   To do so would be mere speculation as to the measure of your rights and remedies."   To meet this

difficulty, the parties, under the advice of learned counsel, remove the difficulty by making certain and definite that which in the first instance was uncertain and indefinite, or by providing a standard by which the uncertainty is removed. In this case plaintiffs agree to pay $50 for each day of delay, after a fixed period, in completing the building. This is an absolute obligation.

[6] Plaintiffs further say that for certain days of delay they shall be entitled to a credit, and provision is made for ascertaining the number of days of delay which come within the excepted class. No principle of public policy, restricting the freedom of contract, prohibits the parties from placing these provisions in the contract, or preventing the court from enforcing them. If the plaintiffs have taken certificates from the architects and owner showing that the days for which they are entitled to credit are "such days" as fall within either of the excepted classes, the measure of plaintiffs' liability is a simple matter of calculation. If they have not done so, other and more difficult questions will be presented. The burden is on the plaintiffs to show the number of excepted days for which they are entitled to credit. As we have said in regard to the completion of the work and the charges for extras, it was competent for the parties to contract that certificates of the conditions entitling the plaintiffs to credit shall be given. It is also true that, notwithstanding this provision, the plaintiffs may show that either by mutual consent, or by conduct showing an intention to waive the certificates, or by conduct on the part of defendant rendering it inequitable to demand strict compliance with the provisions of the contract, they are not required to produce the certificates. 30 Am. & Eng. Enc. 1259. We forbear discussing the evidence relating to the causes of the delay or the conduct of the parties in respect to it.

[7] To the suggestion that plaintiffs have, by their conduct in filing a lien claiming a larger amount than is found to be due, forfeited their statutory lien, it is sufficient to say that it is not within the power of a court of equity to deprive plaintiffs of a legal statutory right. To do so would be to write into the statute a penal clause not found therein as it comes from the Legislature. Where an asserted lien is of purely equitable origin and dependent upon the enforcement of equitable doctrines, the court may, in proper cases, and upon well-understood equitable maxims, or principles, refuse to declare or enforce it, as, for instance, "he who asks equity must do equity," or "a party must come into equity with clean hands." 1 Pom. Eq. 165–167. Such liens, being exclusively of equitable conception and creation, are enforceable only in a court of equity, which may attach to them qualifications and conditions based upon the enforcement of honest disclosures and fair dealing. In this case the lien is the creature of legislation and enforceable in courts of equity either, as here, by express provision found in the statute, or because of the inadequacy of courts of law to afford complete and adequate relief. We have examined the authority cited by counsel. Griff v. Clark, 155 Mich. 611, 119 N. W. 1076, 29 L. R. A. (N. S.) 305, and notes, 130 Am. St. Rep. 582. We fail to find from the principal case, or those cited in the note, any satisfactory standard or rule by which courts may be guided in dismissing or declaring liens invalid for excessive claims. Without en-

tering into the labyrinth of conflicting decisions, we think it safer to adhere to well-settled principles, and hold that a court of equity will enforce the right created by the statute in accordance with the testimony in the cause. In adjudging cost it is proper to consider the reasonableness or bona fides of the claim. If, however, we were permitted to adopt the suggestion of defendant, we would fail to find adequate reason for reaching the conclusion to which we are invited. Defendant, in his answer, admitted that he owed plaintiffs, on the contract, over $20,000. The master finds that he owed them some $8,000 for extras. There is a debatable controversy in regard to their liability for liquidated damages which was decided by the learned District Judge in their favor. The judgment, in so far as it relates to the balance due on the contract, and the charges for extra and omitted work and material, must be affirmed. In respect to the claim of defendant for liquidated damages for delay in the completion of the building it must be reversed. The cause will be remanded to the end that the court may hear in such manner as it deems proper the testimony in regard to the defendant's claim and plaintiffs' claim for credit thereupon. In view of the fact that a very large portion of the testimony was taken in regard to the controversy over the charge for extra work, we think that there should be an equitable apportionment of the cost in this court. The cost of this court, including the cost of printing, will be divided equally between the plaintiffs and the defendant. Let this be certified to the court below.

Modified.