N. L. WYMARD and George L. Stark,
Receivers of Kemmel & Co., Inc.,
Debtor,

v.

McCLOSKEY & CO., Inc., Appellant.

No. 14598.

United States Court of Appeals
Third Circuit.

Argued June 18, 1964.

Reargued Sept. 17, 1964.

Decided March 11, 1965.

Kalodner, Staley and Ganey, Circuit
Judges, dissented.

J. Dress Pannell, Philadelphia, Pa. (Walter Stein, Lawrence D. Biele, Philadelphia, Pa., on the brief), for appellant.

Edward Cohen, Cohen & Novack, Philadelphia, Pa. (David Rosen, Larrick B. Stapleton, Goff & Rubin, Thomas J. Mullaney, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge; and McLAUGHLIN, KALODNER, STALEY, HASTIE, GANEY, SMITH and FREEDMAN, Circuit Judges.

HASTIE, Circuit Judge.

This plenary action was instituted in the district court by the bankruptcy receivers of a painting contractor to recover agreed compensation for work, originally undertaken under a detailed written contract but allegedly completed under a subsequent agreement that the entire job should be paid for on a cost plus basis. The receivers recovered a judgment for $271,346.37 and the defendant appealed.

On first hearing, only the merits of the award were challenged by the appellant. However, this court on its own motion has inquired whether requisite federal jurisdiction is present, and that issue has now been fully presented and considered. We dispose of it first.

The averments relevant to jurisdiction appear as follows in the first three paragraphs of the complaint:

"1. N. L. WYMARD and GEORGE L. STARK were, by Order of this Court, dated March 2, 1960, appointed receivers of KEMMEL & CO., INC., Debtor Plaintiff in the above entitled matter and have duly qualified and are now acting in such capacity as receivers.

"2. On May 2, 1960 Plaintiffs obtained an Order of the Referee in Bankruptcy permitting them to sue the above named McCLOSKEY & CO., INC., Defendant, by reason of the facts more fully set forth herein.

"3. Plaintiff is a corporation incorporated and existing under the laws of the Commonwealth of Penn-

sylvania. Defendant is a corporation incorporated under the laws of the State of Delaware. The matter in controversy exceeds, exclusive of interest and costs, the sum of $10,000."

Having determined that this is, as alleged, a suit by receivers of a Pennsylvania corporation against a Delaware corporation on a claim in excess of $10,000, the parties and the trial judge treated these facts as sufficient to create diversity jurisdiction. However, in determining whether diversity exists, the principal place of business of a corporation, as well as its place of incorporation, must now be treated as the corporate seat. 28 U.S.C., 1958 ed., § 1332(c). Kelly v. United States Steel Corp., 3d Cir. 1960, 284 F.2d 850. The present complaint contains no allegation of the principal place of business of either corporate party.[1] And matter in the record at least suggests that the principal place of business of the defendant corporation is Pennsylvania, the very state in which the bankrupt is incorporated. Accordingly, we have given the plaintiff an opportunity to amend its pleadings and supplement its proof in an attempt to satisfy the jurisdictional requirements of diversity, but the plaintiff has elected to stand on its original pleadings.

In these circumstances, the claim of diversity jurisdiction fails. In so holding, we observe that numbers of cases continue to come before us on appeal in which failure to allege and prove the principal place of business of a corporate party has caused the record to be insufficient to establish the existence of alleged diversity jurisdiction. Yet, absent federal jurisdiction, no judgment of a federal court can stand. It is the continuing responsibility of trial counsel and trial courts to see that all essential jurisdictional facts are alleged and adequately established in the record.

Although the parties and the court below viewed this as a diversity case, the quoted language of the complaint discloses another possible basis of jurisdiction. It is alleged and admitted that the plaintiffs are receivers in bankruptcy authorized by a referee in bankruptcy to sue the defendant on a contract claim of the debtor. Aware of these circumstances, the defendant entered a general appearance and interposed defenses. First, it unsuccessfully moved to stay the proceedings to permit arbitration. Thereafter, it filed an answer and a counterclaim and went to trial on the merits of the controversy. These circumstances, it is now contended, suffice to establish federal jurisdiction under the provisions of section 2 sub. a(7) and 23 sub. b of the Bankruptcy Act. 11 U.S.C. §§ 11, sub. a(7), 46, sub. b. It is not disputed that these sections, read together, confer upon district courts plenary jurisdiction over suits in which bankruptcy receivers seek to collect from third persons sums allegedly owed to the debtor when bankruptcy intervened, provided that such a suit must be brought in a court where the bankrupt might have sued the defendant unless the defendant shall consent to the receiver's suit. Schumacher v. Beeler, 1934, 293 U.S. 367, 55 S.Ct. 230, 79 L.Ed. 433; Williams v. Austrian, 1947, 331 U.S. 642, 652, 67 S.Ct. 1443, 91 L.Ed. 1718. Obviously, the administration of bankruptcy and the adjudication of such suits as may be required for the collection and distribution of bankrupt estates are matters within federal power and primary federal responsibility in our constitutional scheme. Thus, Congress might have subjected a bankrupt's debtor to such a suit as this without regard to federal jurisdiction over a similar suit by the bankrupt before bankruptcy. However, as a matter of policy, Congress so framed section 23, sub. b as to enable a defendant to avoid a plenary suit by a receiver in any federal court in which the bankrupt himself could not have sued that defendant. Viewing this as a limitation of grace upon the normal reach of federal jurisdiction, the courts have consistently held that a defendant's

---

[1]. For an appropriate form of allegation, see 28 U.S.C.A., Fed.R.Civ.P., Rules 1 to 11, 1963 Supp. 20, Appendix of Forms, Form 2.

consent to be sued where the debtor could not have sued him need not be express. Rather, submission by the defendant to the jurisdiction of the court without asserting any objection predicated upon section 23, sub. b is deemed a sufficient consent within the meaning of that section. Gins v. Mauser Plumbing Supply Co., 2d Cir. 1945, 148 F.2d 974 (filing answer); Detroit Trust Co. v. Pontiac Savings Bank, 6th Cir. 1912, 196 F. 29, aff'd 237 U.S. 186, 35 S.Ct. 509, 59 L.Ed. 907 (filing answer); McEldowney v. Card, C.C.E.D.Tenn.1911, 193 F. 475 (answer, set-off and trial).

■ In this case, the defendant's appearance, its answer and, most strikingly, its affirmative request for relief by way of counterclaim, were manifestations of acquiescence that this controversy be adjudicated in the federal forum. The defendant's motion for a stay pending arbitration, which was ultimately denied, Wymard v. McCloskey & Co., E.D.Pa. 1960, 190 F.Supp. 420, aff'd per curiam, 3d Cir. 1961, 292 F.2d 839, was not inconsistent with this acquiescence. Presupposing federal jurisdiction, it merely invoked federal authority to hold litigation in abeyance to permit resort to an allegedly agreed administrative procedure.

■ Nevertheless, the defendant urges that its conduct in litigating this case to final judgment on the merits without objection to the exercise of jurisdiction should not be viewed as voluntary submission to a plenary suit under the Bankruptcy Act because it thought that this was a proper diversity suit to which it could not interpose any valid objection. However, the averments in the opening paragraphs of the complaint asserted facts enough to disclose that jurisdiction could be exercised under the Bankruptcy Act, unless consent should be withheld under section 23, sub. b. And the additional allegations of the complaint concerning diversity jurisdiction were insufficient on their face. What happened was that the defendant, misled by a mistaken view of the legal sufficiency of the complaint under one branch of federal jurisdiction and overlooking its sufficiency under another, consented to litigation in the federal forum. Mere mistake or oversight as to the legal consequence of facts clearly alleged in the complaint does not vitiate such consent. Certainly, if the defendant had simply been unaware that section 23 sub. b existed, that would not have invalidated its consent. We think the additional legal mistake as to the existence of diversity jurisdiction had no greater effect. And since the plaintiff perpetrated no fraud, the fact that it made the same mistake of law does not alter the situation. Cf. McEldowney v. Card, supra.

One other observation seems pertinent. No significant interest is sacrificed and no injustice is done by treating the defendant's conduct as requisite consent to the federal forum. The controversy is within an area of federal power and primary federal concern. The defendant has availed itself of the opportunity to present its case, both defense and counterclaim, in the federal forum and the matter has proceeded to final judgment. Certainly, a judgment for the defendant, on claim or counterclaim, would have been binding upon the plaintiff. It would serve no worthwhile purpose to permit the unsuccessful defendant now to avoid the outcome of this fully litigated case.

We come now to the merits of the case. McCloskey and Co., a general contractor, had obligated itself to construct some 1000 housing units at Fort Meade, Maryland. By formal agreement it subcontracted the painting work to Kemmel and Co. Serious difficulties and delays, not chargeable to Kemmel, greatly increased the amount and cost of the painting work. The court below found that during the progress of the job McCloskey and Kemmel orally substituted for their original contract an agreement that Kemmel would do whatever painting was required and be reimbursed for all of his work on a "cost plus" basis. We think the evidence was sufficient to support this finding and that the authority of McCloskey's representatives who so agreed was sufficiently established.

However, the cost plus contract was not detailed. The court found merely an oral agreement in the most general terms that "all painting work performed by Kemmel be paid for on a 'cost plus' basis". To establish the amount of their claim at trial, Kemmel's receivers undertook to prove charges in various categories thought to be allowable under such an agreement. Labor costs, material costs, expenditures for taxes and workmen's compensation and other cost items directly allocable to this job were proved and allowed. In addition, an amount equal to 15 per cent of the total labor cost was added to reimbursable costs as "overhead", which witnesses said was allowable under the custom of the trade in such cases. This overhead item, amounting to $78,843.44, was separate from and additional to a 10 per cent profit item.

On this appeal, McCloskey argues that the charge for overhead was not allowable, as a matter of law. We find merit in this contention.

The court below did not decide, and in the absence of certain findings it is difficult for us to decide, whether the law of Pennsylvania or the law of Maryland determines the proper interpretation of this oral agreement. Apparently, though the record is not clear on this, both parties had their home offices and principal places of business in Pennsylvania and the original contract seems to have been negotiated and executed there. However, the contract concerned work to be done in Maryland, and there is a trial finding that the oral cost plus agreement was reached at the job site. But because we find no significant difference between Pennsylvania law and Maryland law on the question in controversy, the choice of law question need not be resolved.

 In both states there are clear, authoritative decisions that an agreement in general terms to pay for a job on a cost plus basis does not impose an obligation to pay anything for general overhead, in addition to whatever percentage of cost may be allowed for profit. House v. Fissell, 1947, 188 Md. 160, 51 A.2d 669; Lytle, Campbell & Co. v. Somers, Fitler & Todd Co., 1923, 276 Pa. 409, 120 A. 409, 27 A.L.R. 41. Accord, Charles Elmer & Sons v. Kelly, 5th Cir. 1920, 263 F. 687; Denmark v. Ed B. Mooney, Inc., 1951, 218 Ark. 944, 237 S.W.2d 41, 241 S.W.2d 717. Yet, in this case there has been added to the total cost of labor allocable to this job, what was described in the testimony of the secretary-treasurer of the bankrupt as a charge "of fifteen per cent for overhead, plant equipment, supervision, etc." This was justified as being in accordance with the custom of the trade. But custom cannot prevail over a rule of law that such overhead charges, unless specified in the agreement, are not recoverable under a general promise to pay on a cost plus basis.

The judgment of the district court must be modified to exclude the item of $78,843.44 allowed for overhead. Otherwise, it will be affirmed. Neither party shall be allowed its costs as against the other.

FREEDMAN, Circuit Judge (concurring).

The question presented is a close and difficult one. Decisive for me, however, is the fact that in the present case a full trial has been held and a decision reached on the merits, including the defendant's counterclaim, all without any objection to the jurisdiction of the court.

In contrast to diversity cases in which the consent of the parties and even of the court added cannot confer jurisdiction, proceedings for collection of the assets of a bankrupt estate are within the federal power but the extent of the exercise of this power is made dependent on the consent of the defendant. The strength of the dissenting view therefore lies in the incongruity of attributing to a defendant a consent which admittedly was never sought or intended, because the parties contemplated jurisdiction based on diversity. It is, however, a narrow notion which would restrict consent in every case to an intentional expression. By the doctrine of estoppel the result of a fictional consent has long been recognized whenever the circumstances are such that to

claim a lack of consent would be inequitable.

What is involved here is not the allocation of power between federal and state sovereignties. It seems to me too artificial, therefore, to say that the so-called jurisdictional element—where authority rather than power is involved—requires the casting aside of a laborious process of factual decision in an adversary proceeding hotly contested by both parties, solely because it is brought to the attention of the parties that the jurisdiction which they had thought supported the adjudication of their controversy has evaporated even though the suit could be sustained if the defendant consented. The reality of the contest is for me stronger than a formal expression of consent at this late date.

The purpose of the statutory provision is to afford to a defendant sued by a bankruptcy receiver the choice of having the claim decided by the State or Federal courts. The defendant has the power of choice because Congress intended, as said in Schumacher v. Beeler, 293 U.S. 367, 374, 55 S.Ct. 230 (1934), that these controversies should be heard and determined in the State courts for the greater economy and convenience of litigants and witnesses, but saw no reason to deny the jurisdiction of the Federal courts if the defendant consented to be sued therein. The defendant here tried its case in the Federal court; it never sought a determination of the controversy in the State courts.[1] The reason why the defendant failed to channel the trial into the State courts is not of decisive significance. Error of fact or mistake of law by the defendant, or whatever else may have been the cause of its silence, has now produced the result that resort to the State courts at this time, far from being for the economy and convenience of the litigants and witnesses, or even of the defendant, would cast a double burden on all the parties to the litigation. Its only purpose would be to afford the defendant a chance to relitigate an issue that has been adversarily determined.

The dissenting view would approve the anomalous result that at this stage of a case such as this a plaintiff would be at the mercy of the defendant. For whenever, as here, the defendant had lost on the merits, he would decline to give express consent and thus defeat the judgment against him, yet if he had won, he could express consent and thereby ratify the judgment.

In the circumstances of the present case, therefore, I would hold that the defendant's conduct which culminated in a full adjudication of the merits of the controversy, constituted an acceptance of the jurisdiction of the Court which it is now too late to deny.

I, therefore, concur in the judgment of the Court.

All members of the court who have joined in the majority opinion are also in accord with the views expressed in this concurring opinion.

KALODNER, Circuit Judge (dissenting).

I would vacate the judgment of the District Court for the reason that it lacked jurisdiction to entertain this action.

I agree with the majority's view that "the claim of diversity jurisdiction fails" by reason of the fact that the pleadings fail to satisfy the requirements as to diversity jurisdiction.

I disagree, however, with its view that jurisdiction exists under the Bankruptcy Act by reason of the defendant's asserted "consent" to the institution and prosecution of the instant action.

Section 23(b) provides that suits must "be brought or prosecuted *only* in the courts where the *bankrupt* might have *brought or prosecuted them* if proceedings under this Act had not been instituted, *unless by consent of the defendant* \* \* \*." (emphasis supplied)

---

1. Its effort to deflect the case to arbitration does not touch this point.

It is obvious from the Complaint that it premised the District Court's jurisdiction solely on the diversity of the citizenship of the bankrupt and the defendant.

That that is so is established by the fact that the Complaint, in compliance with the requirement of Rule 8(a) F.R.C.P., that a complaint "contain a short and plain statement of the grounds upon which the court's jurisdiction depends", alleged as follows in Paragraph 3:

> "3. Plaintiff is a corporation incorporated and existing under the laws of the Commonwealth of Pennsylvania. Defendant is a corporation incorporated under the laws of the State of Delaware. The matter in controversy exceeds, exclusive of interest and costs, the sum of $10,000."

The majority agrees that "the parties and the court below viewed this as a diversity case". That the District Court so viewed it is established by the fact that in its Findings of Fact[1] it specifically found:

> "1. Kemmel [the bankrupt] is a painting contractor incorporated and existing under the laws of the Commonwealth of Pennsylvania.

> "2. McCloskey is a general contractor incorporated under the laws of the State of Delaware."

The parties, plaintiffs and defendant alike, frankly admitted that they viewed this case as one in diversity when they first presented themselves for oral argument on this appeal. It was only *after* we had, *sua sponte*, then called attention to the fact that Para. 3 of the Complaint insufficiently pleaded diversity jurisdiction, in failing to allege that the defendant's "principal place of business" was in a state other than Pennsylvania, that the plaintiffs, at a later date, asserted that jurisdiction existed by reason of the defendant's "consent" to the institution and prosecution of this action.

The hard core of the majority's reasoning in subscribing to the plaintiffs' theory of "consent" jurisdiction is that the allegations in the complaint that the plaintiffs are receivers in bankruptcy, authorized by a referee to sue the defendant, sufficiently established jurisdiction below if the defendant "consented" to the action; "consent" need not be "express", and defendant "consented", when it appeared, answered and sought relief by way of counterclaim; and that the defendant's mistaken belief that the suit was properly grounded on diversity jurisdiction "does not vitiate such consent."

The majority's holding that "consent need not be express" is premised on its view that " * * * as a matter of policy Congress so framed section 23, sub. b as to enable a defendant *to avoid* a plenary suit by a receiver in any federal court in which the bankrupt himself could not have sued that defendant," and that "Viewing this *as a limitation of grace upon the normal reach of federal jurisdiction,* the courts have consistently held that a defendant's consent to be sued where the debtor could not have sued him need not be express", and "submission by the defendant to the jursidiction of the court without asserting any objection predicated upon section 23, sub. b is deemed a sufficient consent within the meaning of that section." (emphasis supplied)

I disagree both with the view that Section 23, sub. b was designed by Congress to enable a defendant "to avoid" an action similar to the instant one, and as "a limitation of grace upon the normal reach of federal jurisdiction."

I also disagree with the majority's view, later discussed, that the defendant's submission to the jurisdiction of the court below "without asserting any objection predicated upon section 23, sub. b is deemed a sufficient consent within the meaning of that section". The cases which it cites in support are utterly inapposite.

First, as to the majority's view that Section 23, sub. b was designed as an escape hatch for defendants seeking "to

---

1. The opinion of the District Court is reported at 217 F.Supp. 143 (E.D.Pa.1963).

avoid" submission to federal jurisdiction, and as "a limitation of grace upon the normal reach" of such jurisdiction:

The Supreme Court has time and again, since 1900, held to the contrary. It has ruled that Section 23, sub. b was designed *to limit* the jurisdiction of federal courts with respect to independent actions brought by bankruptcy trustees, and to leave their trial to the state courts. It has also explicitly ruled that absent diversity of citizenship between bankrupt and defendant in such actions, federal jurisdiction is created only by "the consent of the proposed defendant".

In the landmark case of Bardes v. First National Bank of Hawarden, Iowa, 178 U.S. 524, at page 538, 20 S.Ct. 1000, at page 1006, 44 L.Ed. 1175 (1900) it was said:

> " * * * Congress, by the 2d clause of § 23 of the present bankrupt act, appears to this court to have clearly manifested its intention that controversies, not strictly or properly part of the proceedings in bankruptcy, but *independent suits brought by the trustee in bankruptcy to assert a title to money or property as assets of the bankrupt* against strangers to those proceedings, *should not come within the jurisdiction of the district courts of the United States, 'unless by consent of the proposed defendant,' of which there is no pretense in this case."* (emphasis supplied)

and at page 539, 20 S.Ct. at page 1006:

> " '1st. *The provisions of the 2d clause of § 23 of the bankrupt act of 1898 control and limit the jurisdiction of all courts, including the several district courts of the United States,* over suits brought by trustees in bankruptcy to recovery or collect debts due from third parties, or to set aside transfers of property to third parties, alleged to be fraudulent as against creditors, including payments in money or property to preferred creditors.
>
> " '2d. *The district court of the United States can, by the proposed defendants' consent, but not otherwise,* entertain jurisdiction over suits brought by trustees in bankruptcy to set aside fraudulent transfers of money or property, made by the bankrupt to third parties before the institution of the proceedings in bankruptcy.' " (emphasis supplied)

In Bush v. Elliott, 202 U.S. 477, 479–480, 26 S.Ct. 668, 670, 50 L.Ed. 1114 (1906), the Court said:

> "The bankruptcy act of 1898, * * * was a radical departure from the act of 1867 [14 Stat. at L. 517, chap. 176], in the evident purpose of Congress *to limit the jurisdiction of the United States courts in respect to controversies which did not come simply within the jurisdiction of the Federal courts as bankruptcy courts, and to preserve, to a greater extent than the former act, the jurisdiction of the state courts over actions which were not distinctly matters and proceedings in bankruptcy. * * * The intention of Congress to prevent actions not strictly proceedings in bankruptcy from coming within the jurisdiction of the United States courts, except in certain cases, was enacted into law in the section of the statute [Section 23(b)] now under consideration."* (emphasis supplied)

In Schumacher v. Beeler, 293 U.S. 367, 55 S.Ct. 230 (1934) the Court not only declared that Congress intended in Section 23, sub. b to limit the jurisdiction of the federal courts in independent actions brought by bankruptcy trustees and to leave their trial *"for the most part in the state courts"*, but emphasized that "Congress prescribed in section 23b *the condition of consent* on the part of the defendant sued by the [bankruptcy] trustee", and that "Section 23b was thus in effect *a grant of jurisdiction subject to that condition"* (emphasis supplied)

Said the Court at page 374, 55 S.Ct. at page 233:

> "In enacting section 23 [in 1898], it was clearly the intent of the Congress that the federal courts should not have the unrestricted jurisdic-

tion of suits between trustees in bankruptcy and adverse claimants which these courts had exercised under the broad provisions of section 2 of the Act of 1867. *The purpose was to leave such controversies to be heard and determined for the most part in the state courts 'to the greater economy and convenience of litigants and witnesses.'* But no reason appeared for a denial of jurisdiction to the federal court if the defendant, the adverse claimant, consented to be sued in that court. The Congress, by virtue of its constitutional authority over bankruptcies (Const. Art. 1, § 8), could confer or withhold jurisdiction to entertain such suits and could prescribe the conditions upon which the federal courts should have jurisdiction. See Sherman v. Bingham, 21 Fed.Cas. 1270, 1272, No. 12,762. Exercising that power, the *Congress prescribed in section 23b the condition of consent* on the part of the defendant sued by the trustee. *Section 23b was thus in effect a grant of jurisdiction subject to that condition."* (emphasis supplied)

More recently, in Williams v. Austrian, 331 U.S. 642, 67 S.Ct. 1443 (1947) the Court had occasion to note, in another context, that Section 23, sub. b "has, since its enactment in 1898, been viewed as *a sharp restriction upon the jurisdiction theretofore exercised by bankruptcy courts and as a strong preference for state courts."* (emphasis supplied)

The sum of the foregoing is that absent diversity of citizenship between the bank-

rupt and the defendant, in an action within the purview of Section 23, sub. b, federal jurisdiction is *created* only by *"consent of the defendant."*

Under Section 23, sub. b there are only two jurisdictional grounds for plenary suits of the type here involved, namely, (1) diversity of citizenship between bankrupt and defendant, and (2) *consent* of the defendant.

As earlier stated Rule 8(a), F.R.C.P., requires that the complaint "contain a short and plain statement of the grounds upon which the court's jurisdiction depends".

Here the Complaint alleged only the diversity ground and not that of *consent.* The majority has properly rejected the diversity ground because it was not properly pleaded. Surely the total failure to plead the *consent* ground is as fatal as the inadequate pleading of the diversity ground. Bare as it was of "a short and plain statement of the grounds upon which the court's jurisdiction depends", as required by Rule 8(a), the Complaint should have been dismissed by the District Court for lack of jurisdiction at the very outset of this case.

The majority has relied on a number of lower federal court cases to support its view that the failure to plead *consent* jurisdiction in a complaint is not fatal, and that such jurisdiction is sufficiently established by the "submission[2] by the defendant to the jurisdiction of the court without asserting any objection predicated upon section 23, sub. b".

Independent of the circumstance that these cases are inapposite on their facts,[3]

---

**2.** "Submission" by entering an appearance, filing an answer or trial on the merits.

**3.** In Gins v. Mauser Plumbing Supply Co., 148 F.2d 974 (2 Cir. 1945) there was no allegation in the complaint that jurisdiction existed by reason of diversity of citizenship between the bankrupt (the Court called attention to that fact in Note 5, page 977), and the defendant by answering was held to have consented to the court's jurisdiction.

In Detroit Trust Co. v. Pontiac Savings Bank, 196 F. 28 (6 Cir. 1912),

aff'd 237 U.S. 186, 35 S.Ct. 509, where the defendant appeared generally and answered, the court held there was consent for that reason. There is no indication, however, that the complaint in that case premised jurisdiction on diversity of citizenship between the bankrupt and the defendant.

In McEldowney v. Card, 193 F. 475 (C.C.E.D.Tenn.1911), the Court held that the defendant consented to its jurisdiction · by reason of answer, set-off and trial. However, it is significant that in that case the Court expressly noted at

they lack precedential value for these two further salient reasons: first, most of them were decided *before* Rule 8(a) became effective on September 1, 1938, and second, those *later* decided do not afford the slightest indication that they considered the impact of the Rule.

The majority has here taken a position which presents an anomaly. It first holds that the failure of the Complaint to contain an "allegation of the principal place of business of either corporate party" is fatal to a claim of diversity jurisdiction. It then holds, in total disregard of Rule 8(a) that "the averments in the opening paragraphs of the complaint [that the plaintiffs are receivers authorized by a trustee in bankruptcy to sue the defendant] asserted facts enough to disclose that jurisdiction could be exercised under the Bankruptcy Act, unless *consent* should be withheld under section 23, sub. b."

I cannot discern in averments that receivers have been authorized by a bankruptcy referee to bring a suit even a glimmer of an intimation that jurisdiction is based on *consent*.

Assuming, arguendo, that a complaint is not required to state in terms that *consent* is the basis of jurisdiction it is settled that it must at least make such allegation as will put the defendant on notice that jurisdiction is based on his *consent*.

In Toledo Fence & Post Co. v. Lyons, 290 F. 637 (6 Cir.1923), often cited for its holding that a defendant consents to jurisdiction when it answers "upon the merits", it was said (p. 646):

"The *consent* contemplated by section 23(b) would seem to be one given, at the earliest, after bankruptcy, so that it could be *intelligently* made

page 477 of its opinion that "*Neither the citizenship nor residence of the bankrupt was, however, alleged.*" (emphasis supplied)

with *specific reference to the suit* which the trustee was about to bring or had brought." (emphasis supplied)

It is obvious that one cannot *consent* to the jurisdictional premise of a suit of which he is *unaware,* and of which the prosecutor of the suit and the court which tries it are equally unaware. Section 23, sub. b certainly requires that the *consent* to jurisdiction be a *knowing consent* since the creation of jurisdiction is dependent on it.

Here the defendant submitted itself to the jurisdiction of the court in reliance on the allegation, in the Complaint, of diversity of citizenship between it and the bankrupt, albeit such diversity was insufficiently pleaded. The plaintiffs *admittedly* premised their allegation of jurisdiction solely on the diversity of citizenship between the bankrupt and the defendant and the court did likewise.

There was not even a "pretense in this case" of *consent* to the suit within the meaning of Section 23, sub. b as construed by the Supreme Court.

It is the settled rule that words used in a statute must be construed in accordance with their accepted sense and meaning. "Consent", as the term is used by laymen and the legal profession, is defined as "a rational and voluntary concurrence in an act or contract." Funk & Wagnalls, New Standard Dictionary of the English Language, 1942 ed. at page 561.

For the reasons stated I would vacate the judgment of the District Court because of its lack of jurisdiction to entertain this action.*

Circuit Judges STALEY and GANEY join in this dissent.

* Were we to reach the merits we would agree with the majority that the item of $78,843.44 overhead awarded in the District Court's judgment should be disallowed and that otherwise the judgment should be affirmed with no costs to either party as against the other.