# Lytle, Campbell & Co. v. Somers, Fitler & Todd Co., Appellant.

# Lytle, Campbell & Co., Appellant, v. Somers, Fitler & Todd Co.

*Contracts—"Cost plus" contract—Ten per cent "overhead"—Work and materials—Operating charges—Overhead charges.*

1. Overhead or general expenses, as applied to a business concern, producing a utility possessing the quality of value or wealth, as generally understood, includes all administrative or executive costs incident to the management, supervision or conduct of the capital outlay or its business. They are generally of a nonproductive nature and for the greater part solely within the knowledge of the contractors.

2. Operating charges are inseparably connected with the productive end, containing all elements of labor and materials which directly produce a definite end, measured by cost or value.

3. The essential line of distinction between "operating charges" and "overhead charges," is that one is a producing cost, capable of being ascertained by one dealing with a company and the other is a nonproductive or indirect charge, difficult of ascertainment and not ordinarily within an outsider's knowledge.

4. It is not easy to announce any rule of interpretation that will lay down a strict line of demarcation between the two charges, for there are many uncertain items fluctuating between the administrative and operative ends, partaking somewhat of both, which can be properly classified solely from a knowledge of the work done or the charge thereunder. This charge must be determined as each case presents its own peculiar circumstances.

5. "Overhead charges," including salaries of executive or administrative officials, interest charges for floating bonds, carrying charges, depreciation, taxes, rent and general office expenses, cannot be allowed as an "operating charge" in a "cost plus" contract providing that the work shall be done "on a time and material basis, with ten per cent profit as compensation to the contractor."

6. The term "time and material basis" includes the necessary cost of operation affecting the particular undertaking, the cost of labor and materials that go into and become part of the finished product, but does not include the overhead or general expense, or the expense of furnishing and keeping in condition the tools or necessary equipment to do the work.

7. Where an owner receives from the contractor weekly statements, showing a ten per cent overhead added, in addition to the percentage on work and material, without disputing the items, such statements cannot have the effect of accounts-stated, where it appears as a fact that no payment was made on account of the ten per cent overhead, and that the owner did not accept this item as conclusive.

*Appeals—Case tried by court without jury—Modification of judgment—Additional evidence—Practice, C. P.—Act of April 22, 1874, P. L. 109.*

8. An appeal from a judgment on a case tried by the court without a jury under the Act of April 22, 1874, P. L. 109, will be heard and determined as an appeal in equity proceedings.

9. Where in such case the court below has entered judgment for plaintiff, but has wrongfully included certain items detailed in an amended statement of claim, but as to which no evidence was taken, the appellate court will modify the judgment so as to set aside the findings based on the amended statement, and remit the record with a procedendo with leave to produce additional evidence, in order that the amount due, if any, may be properly determined.

Argued October 19, 1922. Appeals, Nos. 133 and 145, Oct. T., 1922, by plaintiff and defendant, from judgment of C. P. Allegheny Co., July T., 1921, No. 494, for plaintiff on case tried by the court without a jury, in case of Lytle, Campbell & Co., Inc., v. Somers, Fitler & Todd Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Judgment modified.

Assumpsit for balance alleged to be due on a building contract. Before EVANS, J., without a jury.

The opinion of the Supreme Court states the facts.

Judgment for plaintiff for $3,768.99. Both plaintiff and defendant appealed.

*Error assigned* by both parties, inter alia, was judgment, quoting it.

*Thomas Patterson,* with him *J. M. Shields,* for Somers, Fitler & Todd Co.—The weight of authority at least by

analogy supports the contention of appellant that the contractor was not entitled to receive "overhead" or payment for the use of machinery in doing the mill work: Shaw v. Beaumont Co., 88 N. J. Eq. 333; Savannah A. & N. Ry. v. Oliver, 174 Fed. 140; Grafton Hotel Co. v. Walsh, 228 Fed. 5.

The items which plaintiff seeks to recover as "overhead" do not come within the terms of the contract providing plaintiff shall be paid on a time and material basis with a ten per cent profit as compensation to the contractors, and for such services plaintiff was not entitled to be paid by defendant other than by the payment of ten per cent profit to the plaintiff figured on "time and material basis": Shaw v. Beaumont, 88 N. J. Eq. 333; Isaac v. Reeve, 44 Atl. 1; Savannah A. & N. Ry. v. Oliver, 174 Fed. 140.

*R. B. Ivory,* for Lytle, Campbell & Co., Inc.—The overhead charges should have been allowed: Allen Iron & Steel Co. v. Iron & Steel Co., 63 Pa. Superior Ct. 459.

There is no confusion anywhere as to the meaning of the word "profit." "Profit represents the net gain made from an investment or from the prosecution of some business after the payment of all expenses incurred": Goodheart v. R. R., 177 Pa. 15; Sims' App., 44 Pa. 345.

Plaintiff made no money or profit out of this job unless there was first paid a proportion of the overhead that this job represents.

The mill work, when delivered to the building, is a finished product the same as brick or nails or glass and plaintiff had a right to either buy it from itself or in the open market, the only obligation being to see that it was purchased at the right price.

OPINION BY MR. JUSTICE KEPHART, January 3, 1923:

This is an action of assumpsit. Defendant, desiring to remodel certain buildings, entered into a contract with plaintiff, Lytle, Campbell & Company, Inc., to do the work

"on a time and material basis, with ten per cent profit as compensation to the contractor, the records of the cost to be kept at all times in such a manner as to be checked and audited by the owners." The controversy in these appeals arises from the construction to be given the words just quoted. Itemized statements were sent each week of the amounts paid the various workmen, and the cost of materials used. At the foot of each statement was a charge "10% overhead." Payments were made on account, from time to time, without reference to any specific statement. After the work was completed, a dispute arose over the "10% overhead." Defendant contended all plaintiff was entitled to receive was the various amounts paid out for the time of laborers and the cost of materials, $64,183, plus ten per cent, $6,-418.32, with the same profit on materials furnished by defendant, $306.88, in all $70,908.20, and it had assumed that the "ten per cent overhead," added to the weekly statements, was the profit allowed under the terms of the contract. Plaintiff, as we have seen, added to these items an overhead charge, arbitrarily fixed by it at ten per cent, plus a like profit on it. It also claimed an additional sum because of a mistake in the charges for millwork, of which we shall speak later.

Defendant paid $70,908.20, leaving in dispute, first, the claim for "overhead," and, second, the additional charge for millwork. The first question the court below decided adversely to plaintiff, and, on the second, gave judgment for $3,768.99. Both sides have appealed, and, as the case was tried without a jury, we will dispose of it finally in this opinion.

Plaintiff was a general contractor, principally engaged in repairing, remodeling and altering buildings, with its main office in the City of Pittsburgh, where this work was done. It had other contracts, in addition to the one before us, and supervised all its engagements from its central office. Under the charge of "overhead" it endeavored to collect "for the use of [these] offices

where the books of account were kept, and the clerks and bookkeepers to keep the books of account from which the records of cost of the operation were kept......The personal supervision of its officers......liability insurance," rent, heat, light, telephones for the buildings in which their business was conducted, and for the use of building equipment. Also a charge for one of its officers as an architect. As we have said, to cover these items it fixed an arbitrary charge of ten per cent of the gross cost of the time and materials furnished to the operation under defendant's contract.

If the charge of "overhead" is not brought within the terms of the agreement, it must fail; and to determine this we must ascertain the intention of the parties from the contract, as we are not aided by extraneous matters. In discussing the factors of costs and charges ordinarily included by the words "time and material basis" "for the work to be done," without any other indication to broaden the scope, it is necessary to consider the general division and proper classification of costs and charges incurred by a business concern such as plaintiff's and to ascertain from such classification what charges are generally accepted in the business world as coming under that designation; and the distinction there made should be borne in mind in construing "cost plus" contracts.

Overhead, or general expenses, as applied to a business concern, producing a utility possessing the quality of value or wealth, as generally understood, include all administrative or executive costs incident to the management, supervision or conduct of the capital outlay or its business. They are to be distinguished from operating charges, or those items inseparably connected with the productive end. The latter charges contain all elements of labor and materials, which directly produce a definite end, measured by cost or value. Overhead charges are generally of a nonproductive nature, in that they do not of themselves directly create a definite util-

ity, and, while they are essential to the life of a business concern, yet in determining the value and the selling price of the utility, they must not be confused with those charges which actually produce a definite end, and upon which an organization depends for its continued existence. Moreover, they are charges usually for the greater part solely within the knowledge of the executive officials. As Ruskin says, in one of his essays on the laws of political economy, "A gain is unjust in a most fatal way which depends on keeping the exchangers ignorant of the exchange value of the articles." On the other hand, operating charges are those which may be seen as the work progresses and are the subject of knowledge from observation. The really essential line of distinction, as we view it, is that the one is a producing cost, capable of being ascertained by those dealing with the company, and the other is a nonproductive, or indirect, charge, difficult of ascertainment, and not ordinarily within the outsider's knowledge. The latter utilizes the earnings produced from the operating end, as the stockholders must, from the earnings of the productive end, pay the charges incident to the management of their capital invested, depreciation, interest and the risk of the venture. When "overhead" is disproportionate to capital and earnings, it usually spells disaster for the concern. There is a necessary correlation between the two, for it is true the one can scarcely exist without the other; but the fundamental difference must be observed, at least in contracts like the one before us. Suppose Lytle was sole owner and general contractor, would a "cost plus" contract permit him to charge for his services as manager, supervising and directing the administration of his own capital invested, and for a part of that supervision which he employs others to perform? Yet that is what is here asked under "overhead." Or if, at the time, this was plaintiff's only contract, and its contention be correct, why should not the entire executive or administrative salary-roll, with rents and other charges, be in-

cluded as part of the operating cost, and if not, upon what theory of allocation would plaintiff proceed? It seems necessary only to mention the possibilities that might arise to answer the suggestion. It is difficult to announce any rule of interpretation that will lay down a strict line of demarcation between the two charges, for there are many uncertain items fluctuating between the administrative and operative ends, partaking somewhat of both, which can be properly classified solely from a knowledge of the work done or the charge thereunder. This charge must be determined as each case presents its own peculiar circumstances. We deal with the facts before us on this appeal, applying, as far as we are able, the general rule above stated.

The term "overhead,"—including the salaries of executive or administrative officials, interest charges for floating bonds, carrying charges, depreciation, taxes and the general office expenses as here claimed,—cannot be allowed as an operating charge in "cost plus" contracts. To do so would open the doors to a flood of obligations not intended by the innocent words used in a contract such as the one before us. The term "time and material basis" was intended to include *the necessary cost of operation* affecting the particular undertaking, the cost of labor and materials that went into and became part of the finished product; each outlay thus expended must be included. To this there was to be added a profit of ten per cent. This latter item was intended to take care of that proportionate share of overhead charges included in the company's "overhead," or general expense, discussed above, as this contract related to plaintiff's general contracts, and, unless expressly written into the contract by defining exactly the overhead intended to be covered, the words "time and material," and like expressions, will not include overhead charges, but refer solely to the wages and salaries of the men engaged in the particular work contracted for and the actual cost of the materials furnished. The words will not be extended be-

yond their exact meaning, and indeed they should be given a restricted meaning. At least they should be considered in the sense in which they are popularly understood. One thus contracting engages to furnish and keep in condition the tools and necessary equipment to do the work.

We may add, the meaning of the words "time and material" bears a close relation to a like construction in mechanics' liens. In construing similar words it has been held that the equipment used in connection with a sewer line could not be included under the term "labor and materials": United States, to use, v. Jacoby, 61 Atl. 871. In Shaw v. Beaumont Co., 88 N. J. Eq. 333, an effort was made to collect salaries of the president, secretary, office boy, disbursements in connection with mortgage loans, telephone calls, carfares, stationery, etc., where the agreement provided the contractor was "to receive for its entire compensation for its services...... a sum *equal to 10 per cent of the entire cost of such building";* the court there said, "The defendant cannot charge the complainant with a proportion of the salaries that it pays its officers for supervising or superintending the building. The defendant is the contracting party; it had a right to employ whomsoever it chose to superintend the building on its part, the work of the laborers employed by it. So, with the other items enumerated above, such as telephone calls, not allowed by the master; they were office charges of the defendant corporation; they were not costs and expenses of the building. So, the tools and necessary appliances for the work contracted to be done were a part of the equipment of the contractor; a contractor, when he agrees to build, must, in the absence of a contrary agreement, furnish all the tools and necessary appliances for the work contracted to be done." And, in the case of Isaacs v. Reeve, 44 Atl. 1, under a cost plus contract, where a charge was entered for the services of one of the firm, Mr. Justice PITNEY said, "the ten per cent was intended to cover that very

service." See also Savannah A. & N. Ry. Co. v. Oliver, 174 Fed. 140; Grafton Hotel Co. v. Walsh, 228 Fed. 5. While not exactly parallel cases, their reasoning aids.

Considering plaintiff's basis of overhead charges, it is purely an estimate, without sufficient foundation. The president states he averaged possibly one hour a day on the work, or say one-tenth of his time. It required only ordinary ability to procure the materials necessary for the structure, or that which the "competent superintendent" included in the contract should have. Labor made up the largest cost. This was to be expected, as the work was remodeling. There were plasterers, carpenters, cement workers, bricklayers, and the like. The items indicate an ordinary piece of work, and the entire time in recording the cost would consume not more than a half hour a day. The plans were all made; there were no detail drawings submitted, and there were none made. While the charge for an architect was included, there were no services even approximating those of an architect. This was purely a make-weight to sustain the ten per cent. The work lasted four months. The only administrative services were those of the bookkeeper in recording the cost, the president an hour a day, telephone, rent and electric light; these are the only cash items that could be considered under plaintiff's own theory of a "cost plus" contract. And yet this plaintiff charges for them, for the four months taken to complete the job, over $7,000. The claim is out of proportion to any overhead charge that, even on appellant's contention, could be legitimately made against this work.

These contracts are very dangerous at best, as our government has had reason to learn during the recent war. Here we have a contract based on a probable estimate to cost not over $35,000. This has been doubled. It is true the contract stated that because the owners desired to make certain changes "the cost plus" charge was substituted. But Mr. Todd, for the defendant, states the changes contemplated were minor ones, that the real

substantial work was enumerated in the contract, and, as we read this paper, we find it covers the details quite thoroughly. Plaintiff admits he had the plans before the contract was made, and had entered into a discussion of them with defendants. It is only another example of a contract where the contractor's chief incentive seems to be to make the price as high as possible.

But it is urged by plaintiff that, defendant having received the several weekly statements, with the ten per cent overhead added, without disputing the matter or bringing it to plaintiff's attention, they should have the effect of accounts-stated, which is an account in writing, examined and accepted by both parties. Acceptance may be express or implied from circumstances: Leinbach v. Wolle, 211 Pa. 629, 630. This ordinarily would be considered a very serious obstacle for defendant to overcome, but the court below finds as a fact that no payment was made on account of the "ten per cent overhead," and its conclusion is justified by the record. It finds further that defendant did not accept the ten per cent overhead as being a conclusive charge against them, but treated it as though it was the ten per cent profit provided by the contract.

But plaintiff elects to treat the account-stated as ineffective; it recognizes the weekly statements were not correct and substitutes therefor a new statement containing new charges, amounting to some three or four thousand dollars more than the weekly statements called for. It would be a great injustice to permit them to proceed in this manner, at the same time denying defendant the same right. For these reasons we deem the position not to be well taken. Upon a thorough consideration of the questions involved on this appeal to number 145, October Term, 1922, the court below was clearly right in holding plaintiff was not entitled to overhead charges in "a time and material" contract.

We now come to the second question brought to us on defendant's appeal. When the bills were sent weekly

they contained charges for "material in millwork" $1,-076.21, and "millwork" $2,221, covering over one hundred different items, without any explanation as to what was embraced in "millwork." Plaintiff, disavowing the charges in its weekly statements, made, in addition to $1.25 per hour in the weekly bill, one wherein was included a per hour sum for the use of the machinery, etc., employed in the millwork, and claimed a balance of $4,294, after deducting payments. Evidently uncertain as to the latter claim, a new one was substituted in an amended statement wherein it reviewed the average actual cost per hour for operating the machines at $1.25, and set up a labor cost of $1.25 per hour, making the mill cost $4,336.25. To this was added an overhead charge of 33 1/3% or $1,445.42; in all $5,781.67.

Of course the two statements cannot be reconciled. Defendant denied them, holding plaintiff to the weekly bill charge of $1.25 per hour. The court below allowed the additional claim; to the $1.25 per hour for running the machines it added a labor charge of $1.25 per hour, with an overhead charge of 33 1/3%, less 10%, on both these items, or 58 1/3 cents. No evidence was offered to sustain the claim except plaintiff's amended statement. It was very general, but no objection was made on this account. There is nothing to show what pieces of material were manufactured or what the charges represented, except as indicated, or whether they were reasonable. Plaintiff's statement, specifically denied by defendant, was not competent evidence of the claim. The denial put it to other proof of the items set forth in its amended statement. The case closed without such proof; there was therefore no competent evidence to sustain the finding. Charge for materials manufactured under plaintiff's contract should not exceed their fair market value, and this is possibly the fairest way to assess the cost. On plaintiff's basis of charge, overhead should not be included. The court below accepted the statement as sufficient, and this re-

lieved plaintiff from offering further proof. Had it been rejected, no doubt other evidence would have established the claim; an opportunity at least should be given to present additional evidence. The materials, whatever they were, having been received and charged for from time to time in the weekly statements, defendant cannot set up lack of consent to their purchase or order.

The case was tried by a judge without a jury, under the Act of 1874. The findings of fact or conclusions of law may be taken to the Supreme Court in the same manner as other appeals by law are prosecuted. In these cases, they shall be heard and determined as appeals in equity proceedings (section 3 of the Act of 1874, P. L. 109), and we follow here the opinion of our Brother SIMPSON in Durante v. Alba, 266 Pa. 444, at page 449, wherein this court said that the court below was right in entering judgment for plaintiff, "but wrong in the measure of damages adopted by it, and hence we must sustain the......assignments, challenging its rulings on this matter, unless the error was harmless. This, however, we cannot conclude from either the findings or the proofs......Happily, under section 1 of the Act of June 16, 1836, P. L. 785, and section 2 of the Act of May 20, 1891, P. L. 101, this error can be corrected by so modifying the judgment as to set aside the assessment of damages, and by remitting the record with a procedendo, with leave to produce additional evidence in order that the damages may be properly determined." The record in that case was remitted for the specific purpose of ascertaining the amount of damages, if any, to be recovered. We also refer to Dick v. Huidekoper, 218 Pa. 380, where we said, "On the material question of fact as to whether Dick advanced for Huidekoper in the nature of a loan 3,000 shares of the capital stock of the Pittsburgh, Shenango & Lake Erie Railroad Company in what is known as the Carnegie deal, there is no distinct finding, and the record is remitted with direction that the court recommit the case to the referee, that he

may pass upon, subject to its review, this one question, on the evidence already taken before him; and, if there should be a finding that such stock was advanced for Huidekoper, in the nature of a loan, Dick is to be credited with the same, at its market value at the time of the trial,......together with interest." Both these cases, like the present one, were tried by the court without a jury.

We therefore conclude that, in the appeal brought to No. 133, October Term, 1922, the court below was in error in giving judgment for plaintiff for the amount claimed in the supplemental affidavit of defense, as there was no competent evidence before it on which to base a judgment. This error can be corrected by so modifying the judgment as to set aside the finding of the court below based upon this part of the statement of claim, that the sum of $3,768.99 is due plaintiff in excess of the amount that has been paid to it, and the assessment of the damage founded thereon, and by returning the record with a procedendo with leave to produce additional evidence, in order that the amount due, if any, may be properly determined. The case is remitted solely for the purpose of passing upon this one question, namely, whether, in accordance with this opinion, there is anything due beyond that already paid under the supplemental affidavit of defense for the millwork, as specified in paragraph 5A, including the ten per cent profit specified in the contract.

The judgment of the court below is modified by reversing the finding of fact on which the judgment is predicated, and setting aside the assessment on which judgment was entered, as well as the amount thereof; and the record is remitted with a procedendo as indicated. Costs to follow further disposition of the case, except those to No. 145, October Term, 1922, which shall be paid by appellant.