Allen, J.
 

 The question involved in this error proceeding is of very narrow scope and relates purely to the admission of testimony.
 

 As the parties occupy the same positions here as in the trial court, we shall call the plaintiffs in error the plaintiffs, and the defendant in error the defendant, throughout this opinion.
 

 The plaintiffs introduced evidence in chief tending to show that they had entered into a contrae! with the defendant for the erection of the triplex in question, and that defendant was to receive by way of compensation 15 per cent, of the cost, plus cost, all of which amount was in no event to exceed $23,000. Plaintiffs further introduced evidence in chief showing that they had advanced to defendant, by way of moneys and notes, a sum in excess of $37,000.
 

 The plaintiffs then cross-examined the defendant, forcing defendant to produce invoices, and offered Mr. W. J. Seifert, as a witness, who testified as follows:
 

 “Q. You are a general contractor here in the city of Youngstown, and have been for how many years ?
 

 “A.
 
 Why, all my lifetime since I have been of age, all with the exception of a few years I was out of town, but I contracted some out of town; about 40 some years I have been in this business.
 

 
 *97
 
 “Q. And yon have been in Youngstown during ■that time?
 

 “A. No, I was away from Youngstown from 1900 to 1910, ten years out of it.
 

 “Q. Now, were you in the contracting business during that time?
 

 “A. Away from here?
 

 “Q. Yes.
 

 “A. Not altogether; some of it, part of the time; a couple of years of it.”
 

 The following question was later asked of the same witness:
 

 “Q. Mr. Seifert, I understand you have been a contractor in the city of Youngstown, a general contractor, figuring all of the elements that go into a contract, subbids or subbider and material and so on for a number of years. Now, have you a way of knowing what the reasonable market value of the lumber required to finish the Knott job, according to the plans and specifications is; answer that yes or no?
 

 “A. Yes, I have.
 

 “Q.
 
 Now, I will ask you what the reasonable
 
 market value of the lumber
 
 required to finish the Knott job, according to the plans and specifica tions figured as of September 15, 1919, or October 1, 1919, say?
 

 “Defendant objects. Objection sustained. Plaintiff excepts to the ruling of the court.”
 

 Later the following question was asked of the same witness:
 

 “Q. I will ask you, Mr. Seifert, what is the
 
 reasonable cost of the entire Knott house,
 
 the construction of the Knott house, according to the
 
 *98
 
 plans and specifications, would have been beginning
 
 about September 15, 1919,
 
 the reasonable cost of that construction according to the plans and specifications, including the extras for the increased size of the garage and the cost of the' two bookcases, the cost of a fireplace on the third floor, and the cost of each of the partitions on the third floor, and the cost, what was occasioned by changing the yellow pine flooring, that was included on these plans and specifications to oak flooring, that is the cost, the reasonable cost, of the construction of the Knott house at that time according to the plans and specifications, including the reasonable cost of the extra indicated?
 

 “Defendant objects. Objections sustained. Plaintiff excepts to the ruling of the court and expected the witness to answer, if permitted, that the entire cost of the construction, including extras,
 
 talcing into consideration the increase on the cost of labor and material, would not exceed $25,000.”
 

 Further testimony was offered on the part, of Mr. W. J. Seifert, as follows:
 

 “Q. How long have you been a contractor in Youngstown?
 

 “A. Youngstown? I worked here in the business over 30 years.
 

 “Q. Were you engaged in the general contracting business in September, 1919?
 

 “A. Yes.
 

 “Q. Here in Youngstown?
 

 “A. Yes.
 

 “Q. Did you have access to the plans and specifications of the Knott triplex, that is in question here?
 

 
 *99
 
 “A. Yes.
 

 “Q. I will ask you. if you are familiar enough with the class of material and labor that was required by these plans and specifications to determine the reasonable cost price of the Knott triplex, according to the plans and specifications?
 

 “Defendant objects. Objection sustained. Plaintiff excepts to the ruling of the court and expected the witness to answer, ‘Yes.’
 

 “Q. I will ask you, Mr. Seifert, what the reasonable and then market — or I will ask you what the cost of the Knott triplex, according to these plans and specifications was on September 15, 1919, figured at the then market value of labor and material required to complete this triplex, according to these plans and specifications.
 

 “Defendant objects. Objection sustained. Plaintiff excepts to the ruling of the court and expected the witness to answer, if permitted, that it would not cost, including a reasonable profit for the contractor, in excess of $26,000.
 

 “Q. Did you ever have any conversation with Mr. Moore about the cost of the Knott triplex, of the cost according to these plans and specifications figured about the 15th, between the 15th of September and the 1st of October, 1919?
 

 “A. Yes, sir.
 

 “Q. Now, tell us what that conversation was.
 

 “Defendant objects. Objections sustained. Plaintiff excepts to the ruling of the court and expected the witness to answer, if permitted, that Mr. Moore said that the building would cost considerably less than $25,000, including commission.”
 

 This testimony was admissible. There were
 
 *100
 
 two main issues of fact in the case: One as to wbat price was agreed upon for building tbe apartment bouse; tbe other as to wbat tbe actual cost of tbe building was. As to tbe first issue, it is tbe law in this state that in an action to recover tbe amount due upon a contract for work, when tbe testimony is conflicting as to the price agreed upon for tbe work, it is competent to show tbe value of such work at tbe time tbe contract was made, as tending to show wbat tbe agreed price was.
 
 Allison
 
 v.
 
 Horning,
 
 22 Ohio St., 138. Evidence upon this precise point was offered and rejected in tbe instant case.
 

 Dickey
 
 v.
 
 Greenleaf,
 
 38 Ohio St., 593, relied on by tbe defendant, does not conflict with this rule. In that case, quoting Mcllvaine, J. (page 597) :
 

 “Tbe issue made by tbe pleadings was not as to tbe amount guaranteed, but as to any guaranty at all.”
 

 In this case tbe issue is not whether there was a contract, but as to tbe amount agreed to be paid under tbe contract. The existence of tbe contract is admitted. In such a situation the doctrine of tbe
 
 Allison case
 
 applies, and, moreover, that rule is tbe general rule. As stated in L. R. A., 1915C, at page 1213:
 

 “By tbe great weight of authority, where tbe parties to a special contract for services are in dispute as to tbe compensation fixed by the contract, evidence of tbe value of tbe services is admissible as bearing upon tbe probabilities of tbe ease, that is to say, as tending to show which statement is more likely to be true. Tbe purpose of tbe evidence is to corroborate tbe party offering it as giving probability to bis statement in regard
 
 *101
 
 to the amount fixed by the contract, and to cast doubt and improbability upon the statement made by the other party.”
 

 The same proposition is advanced in the first paragraph of the syllabus of the
 
 Standard Plunger Elevator Co.
 
 v.
 
 Brumley,
 
 149 Fed., 184, 79 C. C. A., 132:
 

 “Where, in an action for services under an alleged express contract to pay 10 per cent, of the price of certain sales of machinery made by plaintiff, defendant denied the contract as alleged, and averred that the agreement provided for a much smaller compensation, evidence as to the reasonable value of plaintiffs services was admissible as bearing on the question as to which agreement was made.”
 

 Part of the above-offered testimony was also admissible as tending to show .the actual expenditure of labor and material and the actual cost of the building, each of which was an issue of fact under the pleadings. It is true that the questions were not perfectly framed from the standpoint of allowing for fluctuation in price of labor and material. The record shows that the building went on over a period of about nine months. The questions above quoted might therefore have been better drawn to express the entire period in question, namely, from September 15, 1919, to April or May, 1920. However, in this case the contract was made in September, 1919, and the buying of considerable material followed directly upon the making of the contract. The cost of such material in September and the early part of October, 1919, would therefore have some probative force.
 

 
 *102
 
 Moreover, the offers to prove show that the plaintiff expected to question upon the line of fluctuating prices during that period. He was precluded from offering evidence upon this point, and the evidence was competent.
 

 Out of the many decisions which support this view, we quote the following:
 
 Molzahn
 
 v.
 
 Christensen,
 
 152 Wis., 520, 139 N. W., 429, the syllabus of which is in part as follows:
 

 “Evidence as to the reasonable cost of work done and materials furnished by building contractors is competent as bearing upon the question of what was embraced in their oral contract, where that is in dispute.”
 

 The court in its opinion says:
 

 “The next question argued is to the effect that the appellants were prejudiced by the reception of evidence of the reasonable cost of the work done and the material furnished by the plaintiffs in erecting and constructing the barn, milk house, and manure pit. The purpose of this evidence was to aid the jury to ascertain what the contract based on plaintiff’s bid to do work for $4,-946 actually included. We are unable to perceive how plaintiffs could be prejudiced thereby. The evidence would aid the jury in resolving the wide discrepancies in the respective claims of the parties as to what was the actual value of the work performed as compared with the value of the work the parties claimed was embraced in the contract.”
 

 Finally, the evidence offered of a conversation with the builder as to the estimated cost of the triplex, figured between September 15 and October
 
 *103
 
 1, 1919, was admissible upon the question of the credibility of the witness.
 

 If such evidence as that set forth above were not admissible, on the trial of a building contract case, the introduction of testimony upon the part of the builder that he had expended a certain amount upon a building in a cost plus contract would be conclusive and would put the owner completely at the builder’s mercy. Such is not the rule with regard to cost plus contracts. The owner is entitled to show the reasonable value of labor and materials at the time that they were furnished, for whatever bearing such reasonable value may have upon the question of actual cost.
 

 “When a person contracts with a corporation with a reputation for the successful completion cf large enterprises, to do a work at cost and a percentage, he has the right to expect the same skill and ability to be applied to his work that it would give to a work where its profit was dependent upon its ability to do the work at a cost less than the contract price. Especially is this the case where the contractor has refused to allow the owner to have any supervision over the work, and required him to implicitly trust the contractor, and, when it has been shown that the work has been done in reckless disregard of this obligation, the burden rests upon the contractor to prove that the moneys which he claims to have expended were necessarily paid for materials and work upon the job, making due deductions for expenditures enhanced by the inefficiency and incompetency of his employees. If the contractor fails to do this, he should only be allowed the reasonable cost and his
 
 *104
 
 percentage.”
 
 Title Guaranty & Trust Co.
 
 v.
 
 Pam
 
 (Sup.), 155 N. Y. Supp., 333, 337;
 
 Lytle, Campbell & Co.
 
 v.
 
 Somers, Fitler & Todd Co.,
 
 276 Pa., 409, 120 Atl., 409, 27 A. L. R., 48.
 

 The weight of the testimony offered and refused as above set forth was for the jury; that it was competent upon the issue of what the contract was and upon the issue of the actual cost of the building there can be no doubt. Moreover, it went to the very vitals of plaintiffs’ case, and its rejection was prejudicial error.
 

 Judgment of the ’Court of Appeals reversed.
 

 Judgment reversed.
 

 Marshall, C. J., Robinson, Matthias, and Day, JJ., concur.