**HOTPOINT INC.**
v.
**UNITED STATES.**
No. 49524.

United States Court of Claims.
Jan. 5, 1954.

Ednyfed H. Williams, Chicago, Ill., Williams & Leonard, Chicago, Ill., on the brief, for plaintiff.

Donald D. Webster, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER and MADDEN, Judges.

LITTLETON, Judge.

The plaintiff brought suit in this court pursuant to Section 13(b) of the Contract Settlement Act of 1944.[1] The plaintiff is suing for $18,934.88, representing charitable contributions made by it during the years 1942 to 1945 on the ground that the contributions are reimbursable costs under its cost-plus-fixed-fee contract with the War Department (now the Department of the Army.) The plaintiff's contract, entered into on March 18, 1942, did not expressly provide for reimbursement of charitable contributions. The contract was for the installation and operation of an ordnance facility at Cicero, Illinois, to produce caliber .50 armor piercing cores and caliber .50 tubular dowel pins. This contract was terminated on July 31, 1945. The contributions of $18,934.88, here claimed as a cost of performance, were included in plaintiff's termination claim and represented the portion of plaintiff's total contribution to the American Red Cross and the National War Fund, Inc., which plaintiff allocated to this contract. The allocation was made on the basis of the number of employees working on this contract. The plaintiff's request for reimbursement for these contributions as an item of cost of performing the contract was denied by the contracting officer and his decision was affirmed by the Appeal Board, Office of Contract Settlement.

The issue presented in this case is whether these contributions were a reimbursable item of cost within the terms of the contract.[2] There is no dispute as to the facts and both parties have moved for summary judgment.

The pertinent portions of the contract are as follows:

## "TITLE II

## "OPERATION OF PLANT

*"Article II–A—Statement of Work.*

"6. In carrying out the work under this Title II the Contractor is authorized to do and shall do all things necessary or convenient in the operating and closing down of the Project, or any part thereof * * *.

## "TITLE III

## "COST OF THE WORK AND PAYMENT THEREFOR

*"Article III–A—Reimbursement for Contractor's Expenditures.*

"1. The Contractor shall be reimbursed in the manner hereinafter described for such of its actual expenditures in the performance of the work under this contract, as may be approved or ratified by the Contracting Officer, and as are included in but not limited to the following items; * * *.

"1. Extra compensation to employees, discontinuance wages and a proper proportionate share of costs of maintenance of welfare, pension and other employee relations plans maintained by the Contractor; Provided, that the Government shall be chargeable therefor only insofar as the same are consistent with the general employee relations policies existing throughout the Contractor's organization, or are incurred pursuant to agreement made as a result of collective bargaining with the representatives of employees, or are expressly authorized in writing by the Contracting Officer.[3]

*"General.*

"5. No salaries of the Contractor's corporate executive officers, no part of

1. 41 U.S.C.A. § 113(b), 58 Stat. 649, 660.

2. This contract did not incorporate T. D. 5000 and our decision in the Federal Cartridge Corp. v. United States, 77 F. Supp. 380, 111 Ct.Cl. 372, case is not in point because the item there in dispute was specifically provided for in the

contract as a reimbursable item and had been approved by the contracting officer.

3. This section has been amended several times, but since the amendments do not affect the decision in this case the original terms of the contract are used.

the expense incurred in conducting the Contractor's main office or regularly established branch offices, and no overhead expenses of any kind, except as otherwise specifically provided herein, shall be included in the cost of the work under this contract; nor shall any interest on capital employed or on borrowed money be included in the cost of the work."

The plaintiff contends that it is entitled to reimbursement under either Article II–A, 6, or under Article III–A, 1, and that Article III–A, 5, is not applicable. The defendant contends that Article III–A, 5, precludes reimbursement.

■ The plaintiff argues, in support of its first contention, that these contributions were "necessary or convenient" to the operation of the project because they bore a direct relation to the welfare and efficiency of the employees. In our opinion this argument does not aid plaintiff because Article II–A, 6, only pertains to the statement of work to be done. We must look to Article III, the reimbursement section of the contract, to determine whether these contributions are a reimbursable item of cost.

The plaintiff contends that the clause in Article III–A, 5, which states: "* * and no overhead of any kind, except as otherwise specifically provided herein, shall be included in the cost of the work under this contract * * *" does not bar the claimed reimbursement because these contributions were not overhead but were indirect manufacturing expenses. The defendant contends that contributions, such as are here involved, were general administrative expenses and are therefore properly to be regarded as overhead. The defendant further argues that indirect manufacturing expenses, as that term is used by plaintiff, are included within overhead.

■ It is an elementary canon in interpreting a contract that the court should, where the language of the contract is unambiguous, ascertain and effectuate the intention of the parties as expressed by the language in the contract. In so doing the court should give the terms their usual and ordinary meaning even though the intention of one of the parties may have been different from that expressed. Hongkong & Whampoa Dock Co., Ltd. v. United States, 50 Ct.Cl. 213, and the cases cited therein.

The plaintiff introduced in evidence a copy of "Uniform Accounting Manual for the Electrical Manufacturing Industry," which states that charitable contributions are indirect manufacturing expenses. This manual also states that items (which are clearly accepted as overhead) such as depreciation, insurance, heat, light, and power are indirect manufacturing expenses. The manual also defines *shop overhead* as including indirect manufacturing expenses incurred in the operation, maintenance and administration of manufacturing activities. It therefore appears that the manual makes no distinction between indirect manufacturing expenses and manufacturing overhead.

■ We consider the definition of overhead as given by the court in the case of Lytle, Campbell & Co. v. Somers, Fitler & Todd Co., 276 Pa. 409, 120 A. 409, 410, 27 A.L.R. 41, 43, to be the generally accepted meaning of the term:

"Overhead, or general expenses, as applied to a business concern, producing a utility possessing the quality of value or wealth as generally understood, includes all administrative or executive costs incident to the management, supervision, or conduct of the capital outlay of its business. They are to be distinguished from operating charges, or those items inseparably connected with the productive end. The latter charges contain all elements of labor and materials, which directly produce a definite end, measured by cost or value. Overhead charges are generally of a nonproductive nature, in that they

do not of themselves directly create a definite utility * * *."

To be an indirect manufacturing expense the item must be a necessary operating charge inseparably connected with production and capable of being seen as the work progresses. It cannot be said that charitable contributions are an expense of that nature. The plaintiff argues that the contributions had a direct bearing on the cost of production because its employees received a direct benefit from them. We fail to see any direct connection between the contributions and benefit to the employees, but even if there were such a connection we do not see how, under the terms of the contract, that would make the contributions a reimbursable manufacturing expense.

Charitable contributions are made by a corporation in the exercise of discretion by the Board of Directors or proper officers, primarily for public relations purposes and are based on ability to contribute and the need of the charity, as distinguished from a necessary cost of production. We therefore conclude that when charitable contributions are considered as an expense they come within the definition of overhead as administrative or executive costs, incident to the management and conduct of the business.

The plaintiff's statement that ambiguous language in a contract should be construed unfavorably against the party drawing the contract, has no application in this case because Article III–A, 5, when read in conjunction with the entire contract is not ambiguous.

Therefore, the clause in Article III–A, 5, forbidding reimbursement for any kind of overhead not specifically allowed as cost, precludes reimbursement for the charitable contributions, unless there is some other provision in the contract expressly or by necessary implication allowing reimbursement as cost for such an item.

The plaintiff contends that Article III–A, 1, authorizes reimbursement of the contributions because they were cost of maintenance of a welfare or other employee relations plan. The plaintiff states that it had a well-established plan of contributing to charities; that such contributions played a major role in establishing the company's reputation of being a good place to work; that they served to keep the employees happy and contented and thereby increased employee efficiency and morale; that the Red Cross and the Community Fund in some instances enabled plaintiff's employees to solve personal problems and to locate missing members of their family who were in some branch of the armed services; and that the contributions aided generally in establishing the community feeling that plaintiff was working hand-in-hand with the employees in the war effort.

██ It is common knowledge that these organizations served a useful and indispensable community service and plaintiff is to be commended for its generous contributions to them. However, it must be borne in mind that these organizations were performing *public* welfare work, as distinguished from employee welfare work, and any benefits derived from such public welfare by plaintiff or its employees were incidental insofar as the public welfare program was concerned. It is conceded that under some circumstances there would be no ground for distinction between public and employee welfare, but we feel a distinction should be made when a contracting party agrees, as the defendant did here, to pay only for employee welfare. The contract states that defendant is to share a proper proportionate cost "of maintenance of welfare, pension and other employee relations plans *maintained by the Contractor.*" [Emphasis supplied.] It cannot be said that plaintiff by contributing to the Red Cross or Community Fund, which maintained a public welfare plan, was by so contributing, maintaining an employee welfare plan. We believe the scope of this provision was limited to employee relations plans such as pension, profit-sharing, stock-bonus, annuity plans, vacation payments, and plans of that nature which may be the subject of col-

576

lective bargaining between the employees and the plaintiff. We do not believe that this provision of the contract was intended to include charitable contributions, from which the employees would receive only incidental benefits.

We therefore conclude that the charitable contributions to the Red Cross and the National War Fund were not reimbursable costs under Article III–A, 1, because they were not expended for employee welfare within the clear meaning of that provision.

 We conclude upon the whole record that the charitable contributions come more nearly within the term overhead than any other item of expense, and since such expense is specifically mentioned and excluded in Article III, the terms of the contract preclude allowance of the contributions as an item of reimbursable cost.

The plaintiff's motion for a summary judgment is denied and the defendant's motion for summary judgment is granted. The petition is therefore dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.