284 P.2d 468

William A. DUNN and Dorothy A. Dunn, husband and wife, Appellants,

v.

HAMMON DRUG COMPANY, a corporation, Appellee.

No. 5890.

Supreme Court of Arizona.

May 24, 1955.

Ellis & Sult, Eloy, for appellants.

Charles W. Stokes, Coolidge, for appellee.

DON T. UDALL, Superior Court Judge.

This is an appeal by William A. Dunn, et ux. (defendants-appellants) from a judgment in the sum of $5,684.05 rendered in favor of Hammon Drug Company, a corporation (plaintiff-appellee). The parties will hereafter be referred to as plaintiff and defendant.

The parties entered into a written share-crop lease covering cotton farming operations in Pinal County for the calendar year 1951. The action is for the recovery of certain moneys alleged to be due the plaintiff-landlord from the defendant-lessee under the terms of their agreement. The primary question is whether, under a proper interpretation of that contract, the defendant is entitled to charge depreciation on the cotton picking machines used in the harvest as a part of the cost of picking. The part of said lease pertinent to this appeal is as follows:

"All cotton and cotton seed produced on said demised premises shall be delivered to Western Products Company,

Cotton Gin and at the end of each farming season during the term of this lease and, *after first deducting* from any returns from said cotton and cotton seed the costs of growing operations, water costs, the costs of insect or parasite dusting, fertilizing or other treatment and *all costs of picking and ginning, one-half of all remaining cotton and cotton seed or the returns therefrom shall be delivered or paid to Lessor (Plaintiff) as rental for the demised premises."* (Emphasis supplied.)

The case was tried to the court with the aid of jury. However, at the close of the evidence the parties stipulated that the only item in dispute was the actual cost of picking the cotton and hence it was agreed that such issue be submitted to the court for determination and the jury be discharged.

The first assignment of error is to the effect that the court, in computing the amount due plaintiff, had failed to give defendant credit for certain expenditures stipulated at the trial to have been proper charges against the gross proceeds received from the cotton crop. This assignment is disposed of by counsel for plaintiff's admission at the time of oral argument that the judgment rendered was excessive in the amount of $396.10 and its consent that the judgment be modified accordingly.

At a pre-trial hearing it was stipulated that defendant received $14,210.13 as gross receipts from the sale of 568,405# of cotton grown on the land under lease, and at the trial evidence was introduced on behalf of defendant regarding actual cost of picking the cotton and also in support of his claim for inclusion therein of depreciation on the cotton picking machines owned by him. The trial court construed the lease to mean that, after costs of picking amounting to $2,842.03 were deducted from the gross receipts, the remainder would be divided equally between the parties and ordered judgment for the plaintiff and against the defendant in the principal sum of $5,684.05 and costs.

Considering now assignment number two wherein defendant claims that the court erred in refusing to include depreciation as cotton-picking costs, it appears such claim is very novel in that it fails to take into consideration the fact that the lease contains no provision for payment of use of equipment or for depreciation thereon. As a matter of fact the lease expressly provides that "lessees shall furnish all farm machinery, tools and equipment necessary to properly prepare, plant, cultivate, irrigate, mature and harvest said crop", and further that "Lessees shall provide proper financing for the costs of all growing operations". This is a matter of first impression in this court insofar as the subject of depreciation is concerned, however the general theory of the law is that depreciation, unlike maintenance, cannot be charged against cost of operation unless the parties to the agree-

104

ment have specifically agreed thereto. It should be noted the lease in question has a clause providing that the plaintiff will share with defendant "the responsibility of keeping said wells and equipment in good condition and repairs", and likewise no mention is made of depreciation of machinery. In this connection, a headnote in the case of International Ry. Co. v. Prendergast, D.C.N.Y., 1 F.Supp. 623, 627, states:

> " 'Deferred maintenance theory of depreciation' does not accord with rule that requires that 'depreciation' be deducted, since 'maintenance' is distinct from 'depreciation.' "

Defendant contends expense of "overhead" is a legitimate cost of operation and that "depreciation" is recognized as an item properly included therein, hence, he argues, same should be allowed.

In contrasting the term "overhead" with operating charges, the court, in the case of Lytle, Campbell & Co. v. Somers, Fitler & Todd Co., 276 Pa. 409, 120 A. 409, 411, 27 A.L.R. 41, stated:

> "The term 'overhead'—including the salaries of executive or administrative officials, interest charges for floating bonds, carrying charges, *depreciation,* taxes, and the general office expenses as here claimed—*cannot be allowed as an operating charge* in 'cost plus' contracts. * * *" (Emphasis supplied.)

On this same subject, in the case of Advance Auto Body Works v. Asbury Transp. Co., 10 Cal.App.2d 619, 52 P.2d 958, 959, the court expressed the law to be:

> "* * * 'Unless expressly written into the contract by defining exactly the overhead intended to be covered, the words *"time and material," and like expressions,* will not include overhead charges, but refer solely to the wages and salaries of the men engaged in the particular work contracted for and the actual cost of the materials furnished. *The words will not be extended beyond their exact meaning, and indeed they should be given a restricted meaning.* At least they should be considered in the sense in which they are popularly understood. One thus contracting engages to furnish and keep in condition the tools and necessary equipment to do the work.' " (Emphasis supplied.)

The following appears in 12 Am.Jur., Contracts, section 236:

> "Words will be given their ordinary meaning when nothing appears to show that they are used in a different sense and no unreasonable or absurd consequences will result from doing so. Words chosen by the contracting parties should not be unnaturally forced beyond their ordinary meaning or given a curious, hidden sense which nothing but the exigency of a hard case and the ingenuity of a trained and acute mind can discover. * * *"

█ Inasmuch as the lease in question is silent as to the the matter of depreciation

the court cannot create a new contract for the parties but must construe it according to the ordinary meaning of the words used therein. It is our considered opinion that "depreciation" cannot be read into the phrase "all costs of picking", hence the learned trial court was correct in disallowing an item of $3,373 for depreciation.

By assignment of error number three the defendant complains that the court erred in refusing to admit in evidence certain checks which were offered as proof of defendant's claim for repairs to machinery. The defendant offered no competent proof to show that the checks were issued to pay repairs on the machines in question, and further, as the evidence is clear that defendant was also using the machines on privately owned lands having more acreage than contained in the lands covered in the instant lease, it was incumbent on him to show what portion of the time the machines were used on his other leased lands as compared to the time the machines were used on lands here in question so that charges for repairs could be properly prorated. Also, it should be noted that the lease signed by the parties provides that defendant should "open an account in the Valley National Bank, Coolidge, Arizona, in the name of Dunn and Steward and make all payments herein provided for by check from such account. * * *" The exhibit offered in evidence, namely the cancelled checks, shows that this provision of the lease was not carried out by defendant, but instead he drew all the large checks, representing the major part of the claims involved in this assignment of error, on the checking account of William A. or Dorothy J. Dunn. The same criticism can be levelled at the itemized bills from O. S. Stapley Company supplied by defendant subsequent to the trial. Therefore, a sufficient foundation not being laid to properly identify the checks as having been given in payment of repairs properly chargeable to the plaintiff, we hold that the trial court ruled correctly in denying their admission in evidence.

The trial court is directed to reduce the judgment by $396.10, making it read $5,287.95. In all other respects the judgment is affirmed. Defendant to recover his costs.

LA PRADE, C. J., and UDALL, WINDES and PHELPS, JJ., concur.

STRUCKMEYER, J., disqualified on account of having been the trial judge, and Honorable DON T. UDALL, Judge of Superior Court, Navajo County, was called to sit in his stead.