**Stanley KUBELA et ux., Appellants,**

**v.**

**SCHUESSLER LUMBER COMPANY, a Texas corporation, Appellee.**

**No. 15106.**

Court of Civil Appeals of Texas, San Antonio.

Feb. 14, 1973.

Rehearing Denied March 28, 1973.

---

A. W. Worthy, Joe R. Beard, Gresham, Davis, Gregory, Worthy & Moore, San Antonio, for appellants.

Sawtelle, Goode & Davidson, John W. Davidson, Doyle L. Coatney, San Antonio, for appellee.

KLINGEMAN, Justice.

This is a suit on a cost plus contract for the construction of a residence brought by the contractor, Schuessler Lumber Company, the appellee here, against Stanley Kubela and wife, Robbie S. Kubela, the owners. The jury found in answer to the only special issue submitted that the actual cost of construction by appellee to construct the Kubela residence was $55,632.13. Judgment was rendered by the trial court for appellee against appellants in the sum of $55,575.63, as the actual cost of construction;[1] plus an additional amount of $5,462.38 as appellee's compensation under the terms of its contract; interest in the amount of $7,622.65, being 10% interest from October 5, 1970, to the date of judgment; and attorney's fees in the sum of $6,008.62. The court also awarded appellee foreclosure of its mechanic's lien in the amount of $74,675.28 on the property covered in the mechanic's lien contract.

The contract documents herein involved consist of: (a) a mechanic's and materialman's lien note dated March 5, 1970, in the amount of $45,000, signed by the Kubelas, payable to Schuessler Lumber Company on or before 150 days after date, bearing no interest until maturity, but providing that all past due principal and interest shall bear interest from maturity until paid at the rate of 10% per annum, and providing for 10% attorney's fees in the event of suit; (b) a mechanic's and materialman's lien contract dated March 5, 1970, securing said note on 38.68 acres of land in Guadalupe County, Texas, together with the improvements to be constructed thereon, with power of sale; and (c) a letter agreement also dated March 5, 1970, signed by all the parties, the pertinent parts of which read as follows:

"Dear Mr. Schuessler:

"With reference to the Contract of even date herewith providing for the construction of certain improvements on our 38.68 acres in the E. Bollinger Survey in Guadalupe County, Texas, regardless of any other provisions thereof contained, *the actual cost of construction to us will be your actual cost of construction* by you plus ten (10%) per cent of such cost of construction. You will please bill us as of the first of each month for *work completed and material on the job,* which will be paid by us by the tenth (10th) of each month and the ten (10%) per cent additional will be paid upon completion of the construction.

"The sum of $45,000.00, as specified in the Contract hereinabove referred to, is an estimate of the actual cost, but it is understood that the cost will not be determined until the improvements are completed in accordance with the provisions of this letter and that such costs

---

1. The amount awarded by the jury is in excess of the amount alleged by appellee as its actual costs of construction.

and the amount you are to receive could be either more or less than said sum of $45,000.00." (Emphasis ours.)

Appellants bring forth nine points of error. By two points of error they complain that the trial court erred in submitting Special Issue No. 1 with its special instruction.[2] By three points of error appellants contend that the trial court erred in refusing to submit their requested instructions Nos. 1, 2 and 3 defining actual costs of construction.[3] By their sixth point of error appellants assert that the jury's answer to Special Issue No. 1 is against the overwhelming weight and preponderance of the evidence. By two points of error they complain of the award of 10% interest and attorney's fees in the judgment; and by their last point of error they complain that the trial court erred in rendering judgment for foreclosure of the mechanic's lien.

Appellants contend that the charges made and sought to be collected by appellee and eventually awarded by the jury include overhead expenses and other charges not properly chargeable as "actual costs of construction." They assert that in a majority of American jurisdictions overhead expenses are excluded in determining "actual costs of construction" and cite in support thereof 13 Am.Jur.2d, Building and Construction Contracts, § 20, pp. 22–23;[4] 2 A.L.R. 126; 27 A.L.R. 49. They further assert that Texas follows this majority view and in support thereof cite Mailander v. Continental State Bank, 11 S.W.2d 615 (Tex.Civ.App.—Texarkana 1928, no writ).[5]

2. Special Issue No. 1: "What sum of money, expressed in dollars and cents, do you find from a preponderance of the evidence was the actual cost of construction of Schuessler Lumber Company to construct the Kubela residence?
"Answer in dollars and cents, if any.
"Answer: *$55,632.13.*"
As to this issue the court instructed the jury as follows:
"You are instructed that the term 'actual cost of construction', as used in this charge is meant those costs necessarily incurred for labor, materials and other costs directly attributable to the proper construction of the Kubela residence, excluding profit. You are further instructed in answering Special Issue No. 1 you shall not include any sum of money for the 'plus 10%' due Schuessler Lumber Company under the contract documents with the Kubelas."

3. In these requested instructions appellants asked that the jury be instructed not to consider overhead charges, or elements thereof, in determining actual costs of construction.

4. In 13 Am.Jur.2d, supra, it is said:
"Under a 'cost plus' contract the contractor is entitled to recover his costs plus the agreed percentage. A question arises under these contracts as to what is included in the costs. It has been held that the contractor is not entitled, in addition to the percentage called for in the contract, to charge for his general or overhead expenses, such as salaries, telephone service, and office supplies, for his own time in superintending the work, for carfare for laborers, for the cost of extra work not called for by the original contract and commissions thereon, or for the cost of doing over the work which was not properly done. On the other hand, he is entitled to charge for materials and supplies furnished, for the wages of workmen, for the salaries of superintendants, and for accident and indemnity insurance. Under an abandoned contract, he is entitled to charge for the reasonable value of his services.
"The cases are not in accord on the question whether a general contractor under a 'cost plus' contract is entitled to a percentage on the profit of subcontractors. According to some authority, the contractor's percentage can be charged only on the actual material and labor furnished by subcontractors, and not upon their profits, but there is authority to the contrary."

5. *Mailander* was a suit by a manufacturer of bank fixtures against a bank to recover on a contract to take down and reset bank fixtures for actual cost plus 20%. Plaintiff's claim included an item for overhead and other items for labor and material. The trial court excluded the sum found by the jury as overhead from the judgment in favor of the bank. The Court of Civil Appeals affirmed and in its opinion said:
"In view of the work to be done and the relations of the parties to the work, the object of the provision 'actual cost plus twenty per cent.' was, it seems, to include in the accounting between them

A review of these authorities reveals that there is quite a diversity of holdings in this connection, and there does not appear to be any unanimity as to just what items constitute overhead.[6] The particular wording of the contract involved is of considerable importance. In 17A C.J.S. Contracts § 367(2), it is said that the right to and the amount of the contractor's compensation depend on the construction of the percentage or fixed fee provision of the contract, as read in the light of other provisions and circumstances under which the contract was made; and this rule also applies in determining the costs chargeable against the owner, on which the contractor's compensation is to be computed.

It is to be remembered that the "cost plus" provision is found in the letter agreement which provides that, "The actual cost of construction to us will be your actual cost of construction . . . ." Said contract contains the further provision that, "You will please bill us as of the first of each month for work completed and material on the job . . . ." Some cases draw a distinction between cost plus contracts and time and material contracts, and it can be contended that this provision of the contract shows an intention to make the contract a time and material contract. It has been held that a contract providing that all work be done on a time and material basis precludes the contractor from charging any overhead expenses. 17A C.J.S. Contracts § 367(3); Advance Auto Body Works, Inc. v. Asbury Transportation Co., Inc., 10 Cal.App.2d 619, 52 P.2d 958 (1936).

■ We will first consider appellants' point of error that the jury's finding on Special Issue No. 1 is against the great weight and preponderance of the evidence, since this complaint requires a review of the entire record. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1952); Calvert, No Evidence and Insufficient Evidence Points of Error, 38 Tex. Law Rev. 360 (1960).

Appellee, in addition to being in the contracting business, also maintains a retail lumber yard, which businesses are operated together. Appellee's president testified in some detail as to how he determined the exact cost of construction of the residence. The total sum charged to appellants for labor was $8,893.63. Appellee concedes in its brief that said sum of $8,893.63 includes administrative costs in the amount of $1,619. Appellee's president testified that such cost, in addition to the amount paid to the laborers on such job, also included workmen's compensation insurance premiums, appellee's portion of the workmen's social security payment, unemployment insurance premiums, overtime that was considered attributable to the job, cost of supervision, and administrative costs of Schuessler Lumber Company attributable to the job.

---

only the money actually paid for necessary labor and material in directly effecting the alteration of the fixtures, with 'twenty per cent.' added as compensation to the plaintiff. The negotiations of the parties confirm the conclusion that they intended, by 'actual cost' used in the agreement, to refer to the sum actually paid for necessary labor and material in doing the particular job, and in no wise inclusive of any charge for overhead expenses of the appellant's factory at Waco." 11 S.W.2d at 617.

6. There are cases holding that in a cost plus contract the contractor is entitled to charge as a part of the costs of construction taxes applicable to the work, the cost of compensation or liability insurance, the cost of cartage, storage and operating expenses occasioned by the use of equipment. There are other cases holding that overhead charges should not be included, nor should executive or administrative salaries, rents, interest, depreciation of equipment, general taxes, social security taxes, and general office expense. See 17A C.J.S. Contracts § 367(2), supra; Lytle, Campbell & Company v. Sommers, Fitler & Todd Co., 276 Pa. 409, 120 A. 409, 27 A.L.R. 41; (Pa.1923); Lytle, Campbell & Company v. Sommers, Fitler & Todd Co., 287 Pa. 485, 135 A. 117 (Pa.1926).

Appellee's president testified that in determining such labor costs, labor was billed at three fixed rates—$4.15 per hour for top carpenters, $3.75 for journeymen carpenters, and $2.30 for laborers. This is not the amount actually paid to the people who worked on the Kubela job, and an exhibit introduced into evidence shows that the actual wages paid ranged from $2.75 to $1.50. A portion of such variance, according to appellee's president, is due to the method used by appellee in charging overtime which was brought about by the fact that appellee frequently would be building several residences at one time, and that the same laborers would work a portion of each week on different jobs, with the question always arising as to what job the overtime should be allocated to. The balance of the difference arises from the inclusion in the labor charges of an item denominated by appellee as administrative costs which include such items as telephone, utilities, rents, a portion of the president's salary, and other general office expenses. There is nothing in the testimony to show exactly on what basis the allocation was made.

In determining the cost of materials, such materials were billed to appellants at a retail price of $19,296.66, with a reduction of 5% resulting in a charge of $18,331.83. It is undisputed that this figure is not the cost of such material to appellee, but was based on the retail price upon which appellee sold lumber, less a discount of 5%, which appellee's president testified was approximately the net profit on lumber made by them over a period of years. There is evidence, however, that the retail markup on such materials varied from 15% to 40%, depending on the type of materials.

A substantial portion of the work was done by subcontractors, and to each of the subcontractors' bills an additional charge of 5% was added, and the charge to appellants included an additional 5% over and above the amounts actually paid to the subcontractors. Appellee's president testified that the 5% represents a business practice of appellee's on this and other jobs.

Appellants assert that these additional charges made by appellee in determining "actual cost of construction" are not justified by the contract, and are merely arbitrary figures denominated by appellee without adequate explanation or justification. They further assert that the method used by appellee results in stacking of administrative or overhead costs, and in some instances, in double profits.

The jury found the actual costs of construction of the Kubela residence to be $55,632.13. It is to be noted that this is in excess of the amount sought by appellee in its pleadings,[7] and that the jury did not make any reductions in the charges claimed by appellee, but actually awarded more than appellee sought.

■ It is our opinion that some of the charges are erroneous and cannot be justified under the contract. We hold, after a careful examination of the entire record, that the jury's answer to Special Issue No. 1 is so against the great weight and preponderance of the evidence as to be manifestly unjust. This requires a reversal of the judgment and a remand for a new trial. In re King's Estate, supra. It is therefore unnecessary to consider appellants' other points of error, all of which seek a remand.

The judgment of the trial court is reversed and the cause remanded for a new trial.

BARROW, C. J., concurs in the result.

---

7. Although appellee's original bill presented to appellants listed costs in the sum of $57,641.76, in its second amended original petition, the live pleading at the time of the trial, the costs are alleged to be $55,851.43. However, by trial amendment this figure was reduced to $54,623.77.